## MISSOURI PACIFIC RAILWAY COMPANY *v.* STATE OF NEBRASKA.

## SAME *v.* SAME 'EX REL. FARMERS' ELEVATOR COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF NEBRASKA.

Nos. 127, 128.   Argued March 7, 1910.—Decided April 4, 1910.

There are constitutional limits to what can be required of the owners of railroads under the police power.

Requiring the expenditure of money takes property whatever may be the ultimate return for the outlay.

It is beyond the police power of a State to compel a railroad company to put in switches at its own expense on the application of the owners of any elevator erected within a specified limit.   It amounts to deprivation of property without due process of law; and so held as to the applications for such switches made by elevator companies in these cases under the statute of Nebraska requiring such switch connections.

*Quære* whether even if a statute requiring railroad companies to make such switch connections at their own expense be construed as confined to such demands as are reasonable, it does not deprive the railroad company of its property without due process of law if it does not allow the company a hearing as to the reasonableness of the demand prior to compliance therewith, where, as in this case, failure to comply involves heavy and continuing penalties.

81 Nebraska, 15, reversed.

THE facts, which involve the constitutionality of a statute of the State of Nebraska requiring railroad companies to make switch connections with grain elevators under certain conditions, are stated in the opinion.

*Mr. Balie P. Waggener,* with whom *Mr. James W. Orr* was on the brief, for plaintiff in error:

The Nebraska statute in terms, and as construed by the state court, operated to take the property of the railway company for a private use, without its consent, and without com-

pensation, in violation of the Fourteenth Amendment. *C., M. & St. P. R. R.* v. *Minnesota,* 134 U. S. 418; *Hartford Ins. Co.* v. *Railroad Co.,* 175 U. S. 99; see *Ex parte Young,* 209 U. S. 148.

If the validity of this law is sustained, the control and management of railroad property will be turned over to every farmer who wants or imagines he wants side tracks to elevators.

The alternative arrangement of the section of the act in controversy was evidently made for the purpose of avoiding *Missouri Pacific Ry. Co.* v. *Nebraska,* 164 U. S. 403, but it entirely fails so to do.

There is no question of rates to be made nor facilities to be furnished by the railroad company for the transportation of passengers or freight connected with the questions presented in this case. It is not a question of additional or better or different railroad facilities. It is not intended that the railroad company should have any control over this elevator to aid in or facilitate the movement of freight. It is to be purely a private concern, operated by private persons for private gain, and in no manner connected with the public or the railroad company. As to this see *Mann* v. *Pere Marquette R. Co.,* 135 Michigan, 210, 219.

In no event can property be taken, except for public use, nor then without just compensation. *C., K. & N. R. R. Co.* v. *Hazels,* 26 Nebraska, 354; *Gottschalk* v. *C., B. & Q. R. Co.,* 14 Nebraska, 550, 550.

The taking of private property does not necessarily mean the taking of real estate, but applies as well to the taking of personal property as of real property, and where, as in the case at bar, the railway company is not only required to part with the possession of certain portions of its real estate, but also with its money, for the purpose of constructing and operating a railroad the taking of the money is as much inhibited by the Constitution as would be the physical taking of a portion of its right of way, or its real estate. *Welton* v.

*Dickson,* 38 Nebraska, 767; *Mich. Cent. R. R. Co.* v. *Collector,* 100 U. S. 595; *Monongahela Nav. Co.* v. *United States,* 148 U. S. 324; *Atlantic &c. Tel. Co.* v. *Chicago &c. R. R. Co.,* 6 Bissell (U. S.), 158.

The proposed taking of the right of way and moneys of the defendant company is for a private and not a public use. *Re Manderson,* 51 Fed. Rep. 503. *In re Montgomery,* 48 Fed. Rep. 896; and see *C., B. & Q. R. R. Co.* v. *Chicago,* 166 U. S. 233, 241.

The statute, as construed by the Supreme Court of Nebraska, is void, within *L. & N. R. R. Co.* v. *Stock Yards,* 212 U. S. 132. It is arbitrary and unreasonable—denies to the railroad company the equal protection of the law; deprives it of its property, for private use, without compensation and without due process of law. *Interstate Comm. Comm.* v. *Railroad Co.,* 209 U. S. 118. The statute gives the company no discretion or voice whatever in the premises. It can appeal to no tribunal for relief. The fact that the company gives elevator switches to some does not give to every person the right to demand a switch of the railway company. The statute vests in the applicant the power to be the sole judge as to necessity and in that respect is arbitrary and illegal. *Nor. Pac. R. R.* v. *Dustin,* 142 U. S. 492; *Railroad Co.* v. *Minnesota,* 193 U. S. 53; and see *Atlantic Coast Line* v. *N. C. Com.,* 206 U. S. 20.

The power to regulate is not the power to destroy, and limitation is not the equivalent of confiscation. *Reagan* v. *Farmers' &c. Co.,* 154 U. S. 399; *Railroad Commission Cases,* 116 U. S. 331, and see also *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540.

Every person in Nebraska, except a railway company, may exercise some discretion in the management of his business. Under this statute, the railway company has no discretion. See *Hartford Ins. Co.* v. *Chicago Ry.,* 175 U. S. 91; *Dodge* v. *Mission Township,* 107 Fed. Rep. 827; *McKinster* v. *Sager,* 163 Indiana, 671; *Loan Assn.* v. *Topeka,* 20 Wall. 655.

Not only must the purpose be public for which the land is taken, but the State must have a voice in the manner in which the public may use it. *Board of Health* v. *Van Hoesen*, 87 Michigan, 533; *In re Burns*, 155 N. Y. 23–49; *Wisconsin Keely Co.* v. *Milwaukee Co.*, 95 Wisconsin, 153; *Davidson* v. *New Orleans*, 96 U. S. 97–102; *Loan Assn.* v. *Topeka*, 20 Wall. 655.

In operation and effect the statute is a delegation of the right and power of eminent domain, for a private purpose, and, without notice or hearing, permits and authorizes any "person or association" to take and appropriate the private property of the railroad company, without its consent, and without compensation.

This statute of Nebraska is an arbitrary and capricious exercise of power, and denies "the equal protection of the laws." *In re Eureka Warehouse*, 96 N. Y. 42–48; *Weidenfeld* v. *Sugar &c. Co.*, 48 Fed. Rep. 615; *Gaylord* v. *Chicago &c.*, 204 Illinois, 576; *Jordan* v. *Woodward*, 40 Maine, 317.

The statute, on its face, is class legislation, in this: That its operation as to elevators "hereafter" constructed is restricted to those having a capacity of fifteen thousand bushels. *State* v. *Haun*, 61 Kansas, 146; *Cotting* v. *Godard*, 183 U. S. 79; *Leeper* v. *Texas*, 139 U. S. 462.

' Upon 'the conceded facts, the state court was without jurisdiction in the premises, and its order and judgment in violation of the Constitution and laws of the United States.

The statute is in direct conflict with the act of Congress. The one is arbitrary; makes no provision for notice, reasonableness or compensation. The other provides for a hearing and compensation. The one is extreme and populistic in all of its terms; the other is wise, reasonable and just. Congress has also provided the remedy for violation of the commission's orders, and designated the tribunal for its enforcement. *In re Railway Co.* v. *Interstate Comm. Comm.*, 162 U. S. 940; *Armour* v. *United States*, 209 U. S. 78; *Texas & Pacific Ry. Co.* v. *Abilene Cotton Co.*, 204 U. S. 430, 452; *Wilson* v. *The Blackbird*, 2 Pet. 250.

The statute as construed by the state court, is an attempted regulation of the conduct of a carrier, subject to the provisions of the act of Congress, and of the instrumentalities and facilities of that carrier used and necessary to be used in interstate commerce. *Welton* v. *The State*, 91 U. S. 280; *Railroad Co.* v. *Husen*, 95 U. S. 469; *Hall* v. *DeCuir*, 95 U. S. 489; *Lake Co.* v. *Railroad Co.*, 130 U. S. 670; *Railway Co.* v. *Interstate Comm. Comm.*, 162 U. S. 211; *Copp* v. *Railroad Co.*, 43 La. Ann. 511; *Dudley* v. *Mayhew*, 3 N. Y. 9; *The Moses Taylor*, 4 Wall. 411; *Gulf, Col. &c. Ry. Co.* v. *Hefley*, 158 U. S. 99; *Railroad Co.* v. *Haber*, 169 U. S. 613–636.

*Mr. R. C. James, Mr. William P. Thompson* and *Mr. Norris Brown*, with whom *Mr. C. Gillespie* was on the brief, for defendants in error.

*Mr. William P. Thompson* for defendant in error in No. 127; *Mr. R. C. James* and *Mr. Norris Brown*, with whom *Mr. C. Gillespie* was on the brief, for defendant in error in No. 128:

The statute does not operate to take the property of the railway company within the meaning of the Constitution without its consent and without compensation, and is not in violation of the Fourteenth Amendment. *Wis. &c. R. R.* v. *Jacobson*, 179 U. S. 296; *Olcott* v. *Supervisors*, 16 Wall. 678, 684; *Cherokee Nation* v. *Southern Kansas Ry. Co.*, 135 U. S. 641; *United States* v. *Joint Traffic Assn.*, 171 U. S. 505, 569, 570; *Lake Shore Ry. Co.* v. *Ohio*, 173 U. S. 285, 301.

The statute is valid by whatever test applied. Obviously, it is within the provisions of the state constitution. The act is a clear exercise of the police power enjoyed by every sovereignty on which rests the burden to care for the public health, safety and convenience. A common carrier doing an interstate as well as intrastate business is not above the reach of local police authority.

Although to carry out the judgment may require the exercise by the plaintiff in error of the power of eminent

domain, and will also result in some, comparatively speaking, small expense, yet neither fact furnishes an answer to the application of the defendant in error. *Mayor &c.* v. *Northwestern Ry.*, 109 Massachusetts, 112; *People* v. *Railroad Co.*, 58 N. Y. 152, 163; *People* v. *Boston R. R. Co.*, 70 N. Y. 569; *People* v. *Railroad Co.*, 104 N. Y. 58, 67.

In the exercise of its police power the State may legislate for the public convenience as well as for the public health, morals or safety. The side track in question is for the convenience of the public in loading its grain into the cars of the railroad company. It is a public inconvenience, expensive in time as well as money, to haul the grain in wagons from the elevator to the car.

Public convenience justifies statutes requiring interstate carriers to stop at stations long enough to allow passengers to get on and off the trains. *Lake Shore Ry. Co.* v. *Ohio*, 173 U. S. 285, 300. See also *Gilman* v. *Philadelphia*, 3 Wall. 713; *Pound* v. *Turck*, 95 U. S. 459; *Escanaba Co.* v. *Chicago*, 107 U. S. 678, 683; *Caldwell* v. *Am. Bridge Co.*, 113 U. S. 205, 208; *Huse* v. *Glover*, 119 U. S. 543; *West. Un. Tel. Co.* v. *James*, 162 U. S. 650, 662, and *Richmond & Allegheny R. R.* v. *Patterson Tobacco Co.*, 169 U. S. 311, 315.

In compelling the common carrier to deal fairly and without discrimination with its patrons and the public the statute is merely declaratory of the common law. It is a reasonable provision and places no irksome or unnecessary burden on the railroad, whose business is with the grain-shipping public at the elevator, just as it is with the passenger public at the depot.

The constitutional provision against taking property without compensation was not intended to deny the State the proper exercise of its police powers. *C., B. & Q. Ry. Co.* v. *Drainage Comm.*, 200 U. S. 562.

Upon the conceded facts, the State had full jurisdiction in the premises and the Federal Interstate Commerce Commission under the terms of the Hepburn Act is without jurisdic-

tion over the subject-matter involved in the case at bar. *Lake Shore Ry. Co.* v. *Ohio,* 173 U. S. 285.

The Federal tribunal has jurisdiction only of such matters as directly involve interstate commerce.

*Mr. William T. Thompson,* Attorney General of the State of Nebraska, and *Mr. Grant G. Martin* for defendant in error, the State of Nebraska, submitted:

Each State has the inherent power to regulate all commerce within its limits of purely an internal character. *Gibbons* v. *Ogden,* 9 Wheat. 194.

The internal commerce of a State—that is, the commerce which is wholly confined within its limits—is as much under its control as foreign or interstate commerce is under the control of the general government. *Sands* v. *Manistee R. Imp. Co.,* 123 U. S. 288. See also *Wabash, St. L. & P. Ry. Co.* v. *Illinois,* 118 U. S. 557; *The Daniel Ball,* 10 Wall. 557.

The exclusive power to regulate interstate commerce belongs to Congress, but the jurisdiction of the State over its commerce of a purely domestic character is equally exclusive. Regulations such as are in this statute are strictly within the police power of the State. They are not in themselves regulations of interstate commerce; and it is only when they operate as such in the circumstances of their application, and conflict with the express or presumed will of Congress exerted upon the same subject, that they can be required to give way to the paramount authority of the Constitution of the United States. *Stone* v. *Farmers' L. & T. Co.,* 116 U. S. 307, 333, 334; *Smith* v. *Alabama,* 124 U. S. 465, 481, 482; *Hennington* v. *Georgia,* 163 U. S. 299, 308, 317; *N. Y., New Haven & H. R. R.* v. *New York,* 165 U. S. 628, 632; *Gladson* v. *Minnesota,* 166 U. S. 430.

One engaging in interstate commerce does not thereby submit all his business to the regulating power of Congress. *Employers' Liability Cases,* 207 U. S. 463. The Interstate Commerce Act is limited to the regulation of the business of

interstate commerce.   The Hepburn law did not become operative until after this cause of action had accrued.

This act is not special or class legislation.   That the classification limiting the applicability of the law to elevators having 15,000 bushels capacity is greatly to the advantage of the railway company.   Such a class is reasonable, and general in its terms.   It operates on all alike, is restricted to no locality and operates squarely upon all the groups of objects.   It is not special law.   *Hunzinger* v. *State,* 39 Nebraska, 653.   See also *State* v. *Berka,* 20 Nebraska, 375; *State* v. *Graham,* 16 Nebraska, 64; *McClay* v. *City of Lincoln,* 32 Nebraska, 412; *Van Horn* v. *State,* 46 Nebraska, 62; *State* v. *Robinson,* 35 Nebraska, 401; *Livingston Bldg. & L. Assn.* v. *Drummond,* 49 Nebraska, 200.

The act does not seek to take or damage property without just compensation or due process of law.   It is designed to be a facility which will enable the railway company to better serve its patrons and more expeditiously perform its own work.   This side track must ever remain a part of the railroad and hence a part of the public highway of the State.   See *Roby* v. *Farmers' Grain Co.,* 107 N. W. Rep. 766; *Rock Creek Township* v. *Strong,* 96 U. S. 271; *Black* v. *Philadelphia & R. R. Co.,* 58 Pa. St. 249.   *Missouri Pacific Ry.* v. *State,* 164 U. S. 404, is not in point for the reason that the statute under consideration in that case expressly provided that the railroad company should give a site on its right of way to the elevator company on which to build an elevator.

The police powers of the State include questions of public welfare and convenience as well as questions of public health and morals.   *Lawton* v. *Steele,* 152 U. S. 133; *Munn* v. *Illinois,* 94 U. S. 113; *Minneapolis & St. L. R. Co.* v. *Herrick,* 127 U. S. 210; *Chicago, B. & Q. R. Co.* v. *Cutts,* 94 U. S. 155; *Pike* v. *Chicago & N. W. R. Co.,* 94 U. S. 164; *Wisconsin M. & P. R. Co.* v. *Jacobson,* 179 U. S. 287; *Atlantic Coast Line R. Co.* v. *Florida,* 203 U. S. 256; *Atlantic Coast Line* v. *Nor. Car. Corp. Comm.,* 206 U. S. 19.   A railroad company, as an interstate

carrier, may be compelled by state authority to furnish necessary facilities and convenience to accommodate the public within the State even though it suffer loss thereby. *Atlantic Coast Line R. R. Co.* v. *Nor. Car. Corp. Comm.*, 206 U. S. 26. In this case, however, the railroad company will suffer no loss by affording this facility.

Mr. Justice Holmes delivered the opinion of the court.

These are two suits arising under a Nebraska statute. The first is brought by the State to recover a fine of five hundred dollars imposed by the law for failure to obey its command; the second is brought at the relation of the party concerned to compel obedience to the same command by mandamus. The statute in question provides that "every railroad company or corporation operating a railroad in the State of Nebraska shall afford equal facilities to all persons or associations who desire to erect or operate, or who are engaged in operating grain elevators, or in handling or shipping grain at or contiguous to any station of its road, and where an application has been made in writing for a location or site for the building or construction of an elevator or elevators on the railroad right of way and the same not having been granted within a limit of sixty days, the said railroad company to whom application has been made, shall erect, equip and maintain a side track or switch of suitable length to approach as near as four feet of the outer edge of their right of way when necessary and in all cases to approach as near as necessary to approach an elevator that may be erected by the applicant or applicants adjacent to their right of way for the purpose of loading grain into cars from said elevator, and for handling and shipping grain to all persons or associations so erecting or operating such elevators, or handling and shipping grain, without favoritism or discrimination in any respect whatever. Provided, however, that any elevator hereafter constructed, in order to receive the benefits of this act, must have a capacity

of not less than fifteen thousand bushels." Then follows a section making railroads liable for damages in case of wilful violation of the act, (which contains other provisions beside the above), and imposes the above-mentioned fine for each offense. Session Laws of 1905, c. 105, §§ 1, 6.  2 Cobbey's Supplement, § 10007, p. 410.

Under this act the Manley Coöperative Grain Association, a corporation, applied in writing for a site for an elevator on the right of way of the plaintiff in error, in Manley, Nebraska, but the application was refused. Then notice was sent that the corporation-intended to build near the end of a side track at the railroad station at Manley and would expect an extension of the side track. The railroad company replied that it would give no trackage privilege. The elevator was built and a demand was made for a side track, repeating a previous offer to bear a fair share of the expense of the extension. This also was refused, and thereupon the first mentioned suit was brought for the penalty imposed by the act. The other suit is a petition for mandamus at the relation of the Farmers' Elevator Company of Strausville, Nebraska, another elevator corporation, and the facts are so like the foregoing that they do not need special statement. In both cases the railroad company set up that the statute was an attempt to regulate commerce among the States and also was void under the Fourteenth Amendment. After trials the fine was imposed and the peremptory writ of mandamus was ordered, and both judgments were affirmed by the Supreme Court of the State. 81 Nebraska, 15; 115 N. W. Rep. 757.

It will have been noticed that there is no provision in the statute for compensation to the railroad for its outlay in building and maintaining the side tracks required. In the present cases, the initial cost is said to be $450 in one and $1732 in the other; and to require the company to incur this expense unquestionably does take its property, whatever may be the speculations as to the ultimate return for the outlay. *Wood-ward* v. *Central Vermont Railway Co.*, 180 Massachusetts, 599

602, 603.  Moreover a part of the company's roadbed is appro-
priated mainly to a special use, even if it be supposed that the
side track would be available incidentally for other things than
to run cars to and from the elevator.  Now it is true that rail-
roads can be required to fulfil the purposes for which they are
chartered and to do what is reasonably necessary to serve the
public in the way in which they undertake to serve it, without
compensation for the performance of some part of their duties
that does not pay.  *Missouri Pacific Railway Co.* v. *Kansas*,
216 U. S. 262.  It also is true that the States have power
to modify and cut down property rights to a certain limited
extent without compensation, for public purposes, as a neces-
sary incident of government—the power commonly called the
police power.  But railroads after all are property protected by
the Constitution, and there are constitutional limits to what
can be required of their owners under either the police power
or any other ostensible justification for taking such property
away.

Thus it is at least open to question whether a railroad com-
pany could be required to deliver cattle at another than its
own stock yard at the end of the transit, or cars elsewhere than
at its own terminus, without extra charge, if it furnished
reasonable accommodations.  *Louisville & Nashville R. R. Co.*
v. *Central Stock Yards Co.*, 212 U. S. 132, 144.  *Central Stock
Yards Co.* v. *Louisville & Nashville R. R. Co.*, 192 U. S. 568,
570.  *Covington Stock Yards Co.* v. *Keith*, 139 U. S. 128.  So far
as we see a grain elevator stands in no stronger position than a
stock yard.  If, as intimated, the elevators with which the
Missouri Pacific connects charge too much and wrong the
farmers, there may be other remedies; but manifestly the
apprehension expressed by the Supreme Court of Nebraska,
that the company, unless checked, will have power to establish
a monopoly, is not to be met merely by building another ele-
vator—the physical limits of that kind of competition are too
easily reached.  But if we assume that circumstances might
make it reasonable to compel a railroad to deliver and receive

grain elsewhere than at its own elevators, or those that it had made its own by contract, the circumstances must be exceptional when it would be constitutional to throw the extra charge of reduplicating already physically adequate accommodations upon the road.

This statute has no reference to special circumstances. It is universal in terms. If we were to take it literally, it makes the demand of the elevator company conclusive, without regard to special needs and, possibly, without regard to place. It is true that in the first of the present cases the Supreme Court of Nebraska discussed the circumstances and expressed the opinion that the demand was reasonable and that building the side track would not cast an undue burden upon the road; and, in the second, it somewhat less definitely indicated a similar opinion. So it may be, although it hardly seems possible, that the sweeping words of the statute would be construed as, by implication, confining their requirements to reasonable demands. On the face of it the statute seems to require the railroad to pay for side tracks, whether reasonable or not—or, if another form of expression be preferred, to declare that a demand for a side track to an elevator anywhere is reasonable, and that the railroads must pay. Clearly no such obligation is incident to their public duty, and to impose it goes beyond the limit of the police power.

But if the statute is to be stretched, or rather shrunk, to such demands as ultimately may be held reasonable by the state court, still it requires too much. Why should the railroads pay for what, after all, are private connections? We see no reason. And, moreover, even on this strained construction, they refrain from paying at the peril of a fine, if they turn out wrong in their guess that in the particular case the court will hold the demand not authorized by the act. If the statute makes the mere demand conclusive, it plainly cannot be upheld. If it requires a side track only when the demand is reasonable, then the railroad ought, at least, to be allowed a hearing in advance to decide whether the demand is within the

act. Sometimes when summary action is necessary the property owner's rights are preserved by leaving all questions open in a subsequent suit. *North American Storage Co.* v. *Chicago,* 211 U. S. 306. But in such cases the risk is thrown on the destroyer of property. In this case there is no emergency, yet at the best the owner of the property, if it has any remedy at all, acts at its risk, not merely of being compelled to pay both the expense of building and the costs of suit, but also of incurring a fine of at least five hundred dollars for its offense in awaiting the result of a hearing. See *Chicago, Milwaukee & St. Paul Ry. Co.* v. *Minnesota,* 134 U. S. 418. An earlier statute authorizing the State Board of Transportation after hearing to require the railroad to permit the erection of an elevator upon its roadbed already has been held bad. *Missouri Pacific Ry. Co.* v. *Nebraska,* 164 U. S. 403. See also *Hartford Fire Ins. Co.* v. *Chicago, Milwaukee & St. Paul Ry. Co.,* 175 U. S. 91, 99. We are of opinion that this statute is unconstitutional in its application to the present cases, because it does not provide indemnity for what it requires. We leave other questions on one side, and do not intend by anything that we have said to prejudice a later amendment providing for a preliminary hearing and compensation, which is said to have been passed in 1907. (See Laws of 1907, c. 89, p. 309.)

*Judgments reversed.*

MR. JUSTICE HARLAN and MR. JUSTICE MCKENNA dissent.