## UNION LIME COMPANY *v.* CHICAGO AND NORTHWESTERN RAILWAY COMPANY.

ERROR TO THE SUPREME COURT OF THE STATE OF WISCONSIN.

No. 529.   Argued March 2, 1914.—Decided April 6, 1914.

In determining its constitutionality a state statute must be read in the light of the construction given to it by the state court; and if the state court has held a described use for which property may be taken thereunder to be a public one, this court will accept its judgment unless it is clearly without ground.

Even though a spur track at the outset may lead only to a single industry, it may constitute a part of the transportation facilities of the common carrier operated under obligations of public service, and as such open to all and devoted to a public use.

There is a clear distinction between spurs operated as a part of the system of a common carrier under public obligation and mere private sidings. The former are limited to public use and may be the basis for exercise of eminent domain.

It is within the power of the State to invest railway corporations with power of eminent domain to acquire land for a spur track necessary for its transportation business and subject to regulation and open alike to all, even though such track at the outset may serve only a single industry which is to defray the cost thereof subject to reimbursement by others subsequently availing of it; and so *held* as to § 1797–11m, Wisconsin Statutes, providing for construction of spur tracks under conditions specified therein.

152 Wisconsin, 633, affirmed.

THE facts, which involve the constitutionality under the Fourteenth Amendment of a statute of Wisconsin permitting condemnation of right-of-way for spur tracks, are stated in the opinion.

*Mr. George Lines,* with whom *Mr. Willet M. Spooner, Mr. Fred C. Ellis* and *Mr. Louis Quarles* were on the brief, for plaintiff in error:

The record presents a Federal question.

The taking by a State of the private property of one

person or corporation without the owner's consent for the private use of another under the power of eminent domain, or of taxation, or the police power, or any other power, is not due process of law, and is a violation of the Fourteenth Amendment. *Wilkinson* v. *Leland*, 2 Pet. 627, 658; *Murray* v. *Hoboken Co.*, 18 How. 272, 276; *Loan Assn.* v. *Topeka*, 20 Wall. 655; *Davidson* v. *New Orleans*, 96 U. S. 97–102; *Cole* v. *La Grange*, 113 U. S. 1; *Fallbrook District* v. *Bradley*, 164 U. S. 112, 158; *Railway Co.* v. *Nebraska*, 164 U. S. 403, 417; *Insurance Co.* v. *Railway Co.*, 175 U. S. 91; *Railway Co.* v. *Nebraska*, 217 U. S. 196; *Eubank* v. *Richmond*, 226 U. S. 137; *Traction Co.* v. *Mining Co.*, 196 U. S. 239, 251.

The judgment under review is a final one. *Wis. Cent. Ry. Co.* v. *Cornell University*, 49 Wisconsin, 162; *Railroad Co.* v. *Strange*, 63 Wisconsin, 178; *Gill* v. *Railroad Co.*, 76 Wisconsin, 293; *Railway Co.* v. *Railroad Co.*, 100 Wisconsin, 538; *Miller* v. *Railway Co.*, 34 Wisconsin, 533; *Bridge Co.* v. *Bridge Co.*, 138 U. S. 287.

The statute is unconstitutional because it authorizes the taking of private property for private use.

Except under exceptional circumstances private property cannot be taken under the power of eminent domain for the promotion of private enterprises on the ground that such enterprises will promote the general advantage and prosperity.

The statute is invalid because it does not declare in terms or by necessary implication that the use for which it authorizes the taking of private property is a public one. Lewis Em. Domain (3d ed.), § 251; 3 Dillon Mun. Corp. (5th ed.), § 1039; *Hairston* v. *Railroad Co.*, 208 U. S. 598.

Whether the power be exercised directly by the legislature or mediately through municipal corporations or other public agencies, the purpose or use for which private property is authorized to be appropriated should be specified by the legislature, and the power will not be enlarged by

doubtful construction.   1 Lewis Em. Dom., §§ 371 *et seq.;* 3 Dillon Mun. Corp. (5th ed.), § 1039.

Whenever private property is authorized to be taken or affected under the power of eminent domain or of taxation or the police power, the law itself must save the owner's rights and not leave them to the discretion of the courts as such.   *Railroad Co.* v. *Stock Yards Co.,* 212 U. S. 132–144; *Security Co.* v. *Lexington,* 203 U. S. 323–333; *Nickey* v. *Stearns Ranchos Co.,* 126 California, 150; *Reeves* v. *Wood Co.,* 8 Oh. St. 333; *Gifford Drainage Dist.* v. *Shroer,* 145 Indiana, 572; *Fleming* v. *Hull,* 73 Iowa, 598; *Matter of Tuthill,* 163 N. Y. 133; *Attorney General* v. *Eau Claire,* 37 Wisconsin, 437; *Matter of Theresa Drainage District,* 90 Wisconsin, 304, 305.

All condemnation statutes are to be strictly construed in favor of the property owner and the public use must clearly appear.   1 Lewis Em. Domain (3d ed.), § 388; *Eubank* v. *Richmond,* 226 U. S. 137; *Union Lime Co.* v. *Railroad Commission,* 144 Wisconsin, 523.

While the Federal courts are bound by the decision of a state court as to the proper construction or meaning of a state statute or constitution, they are not bound by the decision of the court as to the statute's purpose or effect. A decision involving the latter invokes general reasoning and applies general principles and is not a local question. *Olcott* v. *Fond du Lac Co.,* 16 Wall. 678; *Pana* v. *Bowler,* 107 U. S. 529; *Great Southern Co.* v. *Jones,* 193 U. S. 532; *Scott* v. *McNeal,* 154 U. S. 34; *Venice* v. *Murdock,* 92 U. S. 494.

Providing facilities, however indispensable, for the conduct of private business generally is not a public use. *Hairston* v. *Railway Co.,* 208 U. S. 598; *Railroad Co.* v. *Porter,* 43 Minnesota, 527; *Ulmer* v. *Lime Rock Co.,* 98 Maine, 579; *Railway Co.* v. *Morehouse,* 112 Wisconsin, 1; *Railway Co.* v. *Petty,* 57 Arkansas, 359; *Railway Co.* v. *Dix,* 109 Illinois, 237; *Quarry Co.* v. *Railway Co.,* 175

Indiana, 303; *Railroad Co.* v. *Moss,* 23 California, 323; *De Camp* v. *Railroad Co.,* 47 N. J. L. 43, can all be distinguished as having no bearing upon the question involved in this case. So also as to cases arising under special statutes declaring the furtherance of certain' branches or kinds of industry to be a public use for which the power of eminent domain may be exercised, such as *Fallbrook Dist.* v. *Bradley,* 164 U. S. 112; *Clark* v. *Nash,* 198 U. S. 361; *Strickley* v. *Mining Co.,* 200 U. S. 527. So also as to statutes approved having reference to the development of agriculture or mining or water powers or the draining of swamp lands, and which relate to some particular industry or industries which so affect the community as a whole that their successful prosecution is fundamentally necessary to the common welfare and which are so surrounded by exceptional circumstances as to require the intervention of the State for their prosecution or development, such as *Bankhead* v. *Brown,* 25 Iowa, 540; *Coal Co.* v. *Coal Co.,* 37 Maryland, 537; *Phillips* v. *Watson,* 63 Iowa, 28; *Chesapeake Co.* v. *Moreland,* 31 Ky. L. Rep., 1075; *Kipp* v. *Copper Co.,* 41 Montana, 509; *Zircle* v. *Railroad Co.,* 102 Virginia, 17; *Strickley* v. *Mining Co., supra.*

This court has denied the right to take property under the power of eminent domain or of taxation for the promotion of industrial enterprise or the development of natural resources except under unusual circumstances. *Loan Association* v. *Topeka,* 20 Wall. 655; *Cole* v. *La Grange,* 113 U. S. 1.

A State cannot take property under the power of eminent domain for the purpose of creating a water power to be leased for manufacturing purposes. *Kaukauna Co.* v. *Canal Co.,* 142 U. S. 254, 273. See also *Railway Co.* v. *Nebraska,* 164 U. S. 403; *Railway Co.* v. *Nebraska,* 217 U. S. 196; Lewis on Em. Dom., 3d ed., §§ 256–258; Cooley's Const. Lim., 6th ed., p. 655.

Under the Wisconsin statutes the duty of the railroad to build a side track and its right to condemn right of way therefor are not limited to any particular class of industries and are not made to depend upon the relation of such industries to the public welfare, but extend to all industries and enterprises alike, great and small, and depend only upon their necessities. This under the authorities above cited is not a proper basis upon which to rest the exercise of governmental power, and in all of the cases involving statutes which made private interest the test those statutes have been declared invalid. *Matter of Tuthill,* 163 N. Y. 133; *Apex Co.* v. *Garbade,* 32 Oregon, 582; *Healty Lumber Co.* v. *Morris,* 33 Washington, 490; *Railroad Co.* v. *Gypsum Co.,* 154 Michigan, 290; *Ryerson* v. *Brown,* 35 Michigan, 333; *Water Co.* v. *Judge,* 133 Michigan, 48; *Oil Co.* v. *Hawkins,* 30 Ind. App. 557; *Welton* v. *Dickson,* 38 Nebraska, 767; *Fleming* v. *Hull,* 73 Iowa, 598; *Phosphate Co.* v. *Phosphate Co.,* 120 Tennessee, 260; *Donnelly* v. *Decker,* 58 Wisconsin, 461; *Priewe* v. *Wisconsin Imp't Co.,* 93 Wisconsin, 534; *Maginnis* v. *Ice Co.,* 112 Wisconsin, 385; *Huber* v. *Merkel,* 117 Wisconsin, 355.

The findings of fact in the present case show a taking for private use.

It is essential to the validity of proceedings for the taking of land for spur track purposes that the track, when built, will in fact be accessible to the public. The mere theoretical right of the public to use it is not sufficient. *Hairston* v. *Railway Company,* 208 U. S. 598; *De Camp* v. *Railroad Co.,* 47 New Jersey Law, 43; *Wallman* v. *Connor Co.,* 115 Wisconsin, 617.

The Wisconsin statute shows on its face that the use for which it authorizes property to be taken under the power of eminent domain is a private and not a public one.

Its history and place in the legislation of Wisconsin show that it was intended to enable private parties to

procure side-track facilities when their necessities required, whether needed for public use or not.

The record shows that the proposed side track, if built, will be for the exclusive use of a single industry and will not be accessible to or capable of use by the public.

*Mr. Edward M. Smart,* with whom *Mr. Edward M. Hyzer* was on the brief, for defendant in error, Chicago & Northwestern Railway Company.

*Mr. Walter Drew,* with whom *Mr. L. E. Lurvey* was on the brief, for defendant in error, Eden Independent Lime and Stone Company.

By leave of the court, *Mr. W. C. Owen,* Attorney General of the State of Wisconsin, and *Mr. Walter Drew,* filed a brief as *amici curiæ.*

MR. JUSTICE HUGHES delivered the opinion of the court.

This proceeding was instituted by the Chicago and Northwestern Railway Company to take land for a spur, the construction of which had been ordered by the Railroad Commission of the State. The land was owned by the Union Lime Company, the plaintiff in error, and the application was resisted upon the ground that it was sought to be taken for a private, and not a public, use and therefore that its taking would operate as a deprivation of the property of the plaintiff in error without due process of law and a denial to it of the equal protection of the laws contrary to the Fourteenth Amendment. This contention was overruled by the Supreme Court of the State which affirmed the judgment in condemnation (152 Wisconsin, 633), and this writ of error was sued out.

The proposed track was to form an extension of an

existing spur, owned and operated by the Railway Company, which leads from its main line to the quarries and kilns of two lime companies; one of these companies is the plaintiff in error at whose works the spur now terminates. Beyond these works lie those of the Eden Independent Lime and Stone Company which applied to the Railroad Commission for an order requiring the Railway Company to extend the spur to its plant.  It is provided by § 1797–11m of the Wisconsin Statutes that every railroad shall acquire the necessary right-of-way and shall construct and operate a "reasonably adequate and suitable spur track" whenever it does not necessarily exceed three miles in length, is "practically indispensable to the successful operation" of any existing or proposed manufacturing establishment, and is not "unusually unsafe" or "unreasonably harmful."  The railroad may require the person, firm, or corporation primarily to be served thereby to pay the legitimate cost of acquiring, by condemnation or purchase, the necessary right-of-way for the spur and of its construction, as determined by the Railroad Commission.  By § 1797–12n, the Commission is authorized to receive complaints, in case of the failure or refusal of railroads to perform the prescribed duty, and to make appropriate orders.[1]  Acting under these sections, the

---

[1] These sections, enacted by Chapter 352 of the Laws of 1907, as amended by Chapter 481 of the Laws of 1909 and Chapters 193 and 663, § 342 of the Laws of 1911, are as follows:

"Section 1797–11m. 1. Every railroad shall acquire the necessary rights of way for, and shall construct, connect, maintain, and operate a reasonably adequate and suitable spur track, whenever such spur track does not necessarily exceed three miles in length, is practically indispensable to the successful operation of any existing or proposed mill, elevator, storehouse, warehouse, dock, wharf, pier, manufacturing establishment, lumber yard, coal dock, or other industry or enterprise, and its construction and operation is not unusually unsafe and dangerous, and is not unreasonably harmful to public interest.

"2. Such railroad may require the person or persons, firm, corpora-

Commission directed the Railway Company to extend the spur as desired by the Eden Company and thereupon this proceeding was brought to condemn the land for the right-of-way.

The assignments of error come to the single point,—as to the character of the use. The State through its highest court declares the use to˙ be a public one, and we should accept its judgment unless it is clearly without ground.

tion or association primarily to-be served thereby, to pay the legitimate cost and expense of acquiring, by condemnation or purchase, the necessary rights of way for such spur track, and of constructing the same, as shall be determined in separate items by the commission, in which case the total estimated cost thereof shall be deposited with the railroad before the railroad shall be required to incur any expense whatever therefor; provided, however, that when any such person, firm, corporation or association, shall be required by the commission to deposit with the railroad, the total estimated cost, as herein provided, such person, firm, corporation or association, may offer or cause to be offered, a proposition in writing to such railroad, to construct such spur track, such proposition to be accompanied by a surety company bond, running to such railroad, and conditioned upon the construction of such spur-track in a good and workmanlike manner, according to the plans and specifications provided by such railroad, and approved by the commission, and deposit with such railroad the estimated cost of the necessary right of way for such spur track; and whenever such proposition and security company bond shall be offered the person, firm, corporation, or association primarily to be served thereby, shall not be required to deposit as herein provided, as the total estimated cost of such construction, an amount in excess of the estimated cost of the right of way, and the total amount stated in such written proposition. Provided further that before the railroad shall be required to incur any expense whatever in the construction of said spur track, the person, firm, corporation, or association primarily to be served thereby, shall give the railroad a bond to be approved by the commission as to form, amount and surety, securing the railroad against loss on account of any expenses incurred beyond the amount so deposited with the railroad.

"3. Whenever such spur track is so connected with the main line, as herein provided, at the expense of the owner of such proposed or existing mill, elevator, storehouse, warehouse, dock, wharf, pier, manufacturing establishment, lumber yard, coal dock, or other indus-

*Fallbrook Irrigation District* v. *Bradley,* 164 U. S. 112, 160; *Clark* v. *Nash,* 198 U. S. 361, 369; *Strickley* v. *Highland Boy Mining Co.,* 200 U. S. 527, 531; *Offield* v. *N. Y., N. H. & H. R. R. Co.,* 203 U. S. 372, 377; *Hairston* v. *Danville & Western Rwy. Co.,* 208 U. S. 598, 607. The general authority to exercise the power of eminent domain for the construction of spurs is found in § 1831–a, Stats. (Wis.), which provides: "Every railway company . . . may build, maintain and operate branches and spur tracks from its road or any branch thereof to and upon the grounds of any mill, elevator, storehouse, warehouse, dock, wharf, pier, manufacturing establishment, lumber yard, coal dock or other industry or enterprise, . . . ; and every such company may acquire by purchase or condemnation in the manner provided in this chapter for the acquisition of real estate for railway purposes, other than for its main track, all necessary roadways and rights

---

try or enterprise, and any person, firm, corporation, or association shall desire a connection with such spur track, application therefor shall be made to the commission, and such person, firm, corporation, or association shall be required to pay to the person, firm, corporation, or association that shall have paid or contributed to the primary cost and expense of acquiring the right of way for such original spur track, and of constructing the same, an equitable proportion thereof, to be determined by the commission, upon such application and notice, to the persons, firms, corporations, or associations that have paid or contributed toward the original cost and expense of acquiring the right of way and constructing the same.

"Section 1797–12n. In case of the failure or refusal of any railroad to comply with any of the provisions of sections 1797–11m and 1797–12n, the person or persons, firm, corporation or association aggrieved thereby may file a complaint with the railroad commission setting forth the facts, and the said commission shall investigate and determine the matter in controversy, in accordance with the provisions of sections 1797–1 to 1797–38, inclusive, and any order it shall make in said proceeding shall have the same force and effect as an order in any other proceeding properly begun under and by virtue of the provisions of said sections."

of way for such branches, spur tracks," etc.   The Supreme
Court of the State sustained the validity of this provision
in *Chicago & Northwestern Rwy.* v. *Morehouse*, 112 Wis-
consin, 1, holding (p. 11) that "the fact that a spur track
may run to a single industry does not militate against
the devotion of the property thereto being a public use
thereof, so long as the purpose of maintaining the track is
to serve all persons who may desire it, and all can demand,
as a right, to be served, without discrimination."

In *Union Lime Company* v. *Railroad Commission*, 144
Wisconsin, 523, the court had under review an earlier
order of the Commission requiring the railroad to build the
spur extension now in question and, while that order was
set aside because a proper hearing had not been afforded,
it was held that the spur would not be a private track, but
would be devoted to a public use.   In the view that the
tracks contemplated would be of this character, the court
sustained  the  statutes  (§§ 1797–11m  and  1797–12n),
under which the Commission was proceeding, against the
same objections that are now raised.   The court said (*id.*
pp. 533–534): "Such track when built becomes a portion
of the trackage of the railroad.   The fact that its initial
cost is borne by the party primarily to be served, with
provisions for subsequent equitable division of such cost,
does not make it a private track nor change the nature of
its use.   Over it the products of the industry find their
way into the markets of the world, and every consumer is
directly interested in the lessened cost of such products
resulting from the building and operation thereof.   That
these products are supplied by a single owner, or by a
limited number of owners, affects the extent and not the
nature of its use—the track is none the less a part of the
avenue through which the commodities reach the public.
Subject to the equitable division of initial cost, the track
is at the service of the public as much as any other, and it
constitutes an integral part of the railroad system.   The

duty to maintain and operate it rests upon the railroad. Except that it is relieved of the initial cost of right of way and construction, the track stands in the same relation to it that any other portion of its track does. The owner of the industry obtains no interest in or control over it beyond that of being served by it equally with any one else who may desire to use it." This decision was followed in the present case. 152 Wisconsin, 633, 637.

Assailing this ruling, the plaintiff in error insists that the statute itself (referring to §§ 1797–11m and 1797–12n) authorizes the taking of property for private use, and that, being unconstitutional on its face, it cannot form the basis of any valid proceeding. It is said, in the first place, that the statute does not declare in terms or by necessary implication that the use for which the property is to be taken is a public use. But this contention is plainly without merit as the statute must be read in the light of the construction placed upon it by the state court which has held the described use to be a public one. The judgment of the State so far as it is competent to determine the matter has thus been fully expressed.

It is urged, further, that the statute is necessarily invalid because it establishes as the criterion of the Commission's action the exigency of a private business. This objection, however, fails to take account of the distinction between the requirements of industry and trade which may warrant the building of a branch track and the nature of the use to which it is devoted when built. A spur may, at the outset, lead only to a single industry or establishment; it may be constructed to furnish an outlet for the products of a particular plant; its cost may be defrayed by those in special need of its service at the time. But none the less, by virtue of the conditions under which it is provided, the spur may constitute at all times a part of the transportation facilities of the carrier which are operated under the obligations of public service and are

subject to the regulation of public authority. As was said by this court in *Hairston* v. *Danville & Western Rwy. Co., supra* (p. 608): "The uses for which the track was desired are not the less public because the motive which dictated its location over this particular land was to reach a private industry, or because the proprietors of that industry contributed in any way to the cost." There is a clear distinction between spurs which are owned and operated by a common carrier as a part of its system and under its public obligation and merely private sidings. See *De Camp* v. *Hibernia R. R. Co.*, 47 N. J. Law, 43; *Chicago &c. R. R. Co.* v. *Porter*, 43 Minnesota, 527; *Ulmer* v. *Lime Rock R. R. Co.*, 98 Maine, 579; *Railway Company* v. *Petty,* 57 Arkansas, 359; *Dietrich* v. *Murdock*, 42 Missouri, 279; *Bedford Quarries Co.* v. *Chicago &c. R. R. Co.*, 175 Indiana, 303.

While common carriers may not be compelled to make unreasonable outlays (*Missouri Pacific Rwy. Co.* v. *Nebraska*, 217 U. S. 196), it is competent for the State, acting within the sphere of its jurisdiction, to provide for an extension of their transportation facilities, under reasonable conditions, so as to meet the demands of trade; and it may impress upon these extensions of the carriers' lines, thus furnished under the direction or authority of the State, a public character regardless of the number served at the beginning. The branch or spur comes into existence as a public utility and as such is always available as localities change and communities grow. The Supreme Court of Wisconsin has left no doubt with respect to the public obligations imposed upon the carrier in relation to the spurs and branches to be provided under the statute in question, and we find no ground for the conclusion that this enactment was beyond the state power.

It is also contended by the plaintiff in error that the finding by the state court that the use in the present case is a public one is not supported by the facts. But this

criticism of the court's finding is in substance a repetition of the argument that is urged against the validity of the statute and what has been said upon that point is applicable.

The judgment is affirmed.

*Affirmed.*