McInnis et al. *v.* New Orleans & N. E. R. Co.

[68 South. 481.]

Constitutional Law. *Railroads.* *Due process of law.* *Deprivation of property.*

Laws 1908, chapter 88, which provides that upon application the Railroad Commission may order railroad companies to construct and maintain spur tracks so as to connect their main line with manufacturing or other industrial plants, if the sidings can be constructed without undue hazard to the property or trains of the railroad company, is violative of the fourteenth amendment of the Constitution of the United States, which prohibits the deprivation of property without due process of law, since it does not provide for compensation to the railroad company, nor make the right contingent on the amount of freight offered by the applicant.

Appeal from the circuit court of Forest county.
Hon. P. B. Johnson, Judge.

Suit by A. K. McInnis and another against the New Orleans & North Eastern Railroad Company. From a judgment for defendant, plaintiff appeals.

Chapter 88, Laws 1908, is as follows: That upon application to it for that purpose the railroad commission may order side tracks, spur tracks, loop or switch tracks to be constructed by railroad companies so as to connect their main line with manufacturing or other industrial plants, if they can be constructed without causing undue hazard to the property or trains of the railroad company; but all expenses for the right of way, grading, crossties, rails, spikes, fastenings, and switches required shall be defrayed, unless otherwise agreed on, by the person, company, or corporation applying for their construction.

If the applicant shall comply with such rules and regulations as are uniformly in force by the railroad company for the safe operation of similar tracks, spur tracks, loop or switch tracks situated on its lines, they shall not, after having been constructed, be removed, abandoned, or destroyed without the consent of the commission, given after ten days' notice of the application to it for such consent to the party or parties or their assigns upon whose application they were required to be constructed.

*Currie & Currie,* for appellant.

We contend that chapter 88 of the Acts of 1908, is based upon the police power of the state to control and regulate the operations of railroads in the state, and that it is a reasonable exercise of that power, and is not violative of the fourteenth amendment to the Constitution.

Mr. Sedgwick, in his work on constitutional law says that: ''The clause prohibiting the taking of private property without compensation is not intended as a limitation of the exercise of those police powers which are necessary to the tranquility of every well ordered community, nor of that general power over private property which is necessary for the orderly existence

of all orderly governments. It has always been held that the legislature may make police regulations, although they may interfere with the full enjoyment of private property and though no compensation is given." Sedgwick's Statutes and Constitutional Law, 435.

A recent writer on the limitations of police powers says that: "Where the letter of the Constitution would prohibit police regulations, which by all the principles of Constitutional government have been recognized as beneficent and permissible restrictions upon the individual liberty of action, such regulations will be upheld by the courts on the ground that the framers of the Constitution could not possibly have intended to deprive the government of so salutary a power, hence the spirit of the Constitution permits such legislation, although a strict construction of the letter prohibits." Tiedeman, Police Powers, 12.

Judge Dillon, in his work on Municipal Corporations, volume 1, page 212, says that: "Every citizen holds his property subject to the proper exercise of this (police) power, either by the state legislature directly, or by public or municipal corporations to which the legislature may delegate it.—It is well settled that laws and regulations of this character, though they may disturb the enjoyment of individual rights are not unconstitutional, though no provision is made for compensation for such disturbances. . . . If one suffers injury, it is either *damnum absque injuria*, or, in the theory of the law he is compensated for it by sharing in the general benefits which the regulations are intended and calculated to secure."

Compensation has never been a condition of its exercise, even, when attended with inconvenience or pecuniary loss, as each member of a community is presumed to be benefited by that which promotes the general welfare. All authorities agree that the Constitution presupposes the existence of the police power,

and is to be construed with reference to that fact.
2 Hare, Am. Const. Law., 776; Anderson's Law Dic.,
Title, Police.

The courts have been equally emphatic in their dec-
larations upon this subject. In *Thorpe* v. *Rutland &
Bur. R. R. Co.*, 27 Vt. 140, the court said: "There is
also the general police power of the state, by which
persons and property are subjected to all kinds of res-
traints and burdens in order to secure the general com-
fort, health and prosperity, of the perfect right in the
legislature to do which no question ever was, or, upon
acknowledged general principles, ever can be, made."

In the case of *People* v. *Gillson*, 109 N. Y. 389-398,
the court said: "All property is held subject to the
general police power of the state to so regulate and con-
trol its use in a proper case as to secure the general
safety and the public welfare." *Village of Carthage* v.
*Carlos L. Frederick*, N. Y. Ct. App. (2 Div.), 10 L. R.
A. 178; 122 N. Y. 268, 25 N. E. 480.

The fourteenth amendment does not limit the subjects
with reference to which the police power may be exer-
cised. *Minneapolis and St. Louis R. R. Co.* v. *Beckwith*,
129 U. S. 29, 9 Sup. Ct. 207, 33 L. Ed. 585; *Cantini* v.
*Tillman*, 54 Fed. 969.

If the act, and the Constitution can be construed
together so as to let both stand, and each can be given
a proper and legitimate purpose, it is the duty of the
court to adopt that construction. *People* v. *Rosenberg*,
138 N. Y. 415.

In the lower court counsel for the demurrant urged
with great zeal and with telling effect the point that
the act is unconstitutional because it provides no com-
pensation for a railroad required to use its money in
constructing such tracks. If we are correct in our con-
tention that the act is a police regulation, and it un-
doubtly is, the authorities cited settle the point against
the demurrer. "Due compensation" "Full compen-

sation" nor indeed any compensation has ever been recognized by textbook writers nor the courts to be a condition either precedent or subsequent to the exercise of this power.

*R. H. & J. H. Tompson,* for appellee.

The application of the Southern Cement etc. Company to the railroad commission was based upon the statute. Laws Mississippi 1908, chapter 88, page 72, and there can be no merit in this appeal, even were the declaration well drawn, if the statute be invalid, since plaintiff's case is wholly dependent upon it.

We submit, and such was the judgment of the trial court, that the statute is absolutely and utterly void, because violative of the fourteenth amendment of the Constitution of the United States, providing that no state shall deprive any person of property without process of law, and, as well, of section 14 of the Constitution of Mississippi, 1890, providing that no person shall be deprived of property without due process of law.

An examination of the statute shows, that it undertakes by its first section to empower the commission, if the applicant for an order thereunder provides the right of way, grading, crossties, rails, spikes, fastenings and ditches required, to order the railroad company, at its own expense, to construct side tracks, spur tracks, etc., "so as to connect their main lines with manufacturing or other industrial plants," and by its second section to prohibit the removal, abandonment or destruction of such tracks without the consent of the commission.

It will be observed: First, that there is no limit to the length of the spur tracks mentioned in the statute and consequently no limit to the cost of their construction, and there is nothing in the declaration or in the order of the commission exhibited with the pleading

or elsewhere in the record showing the distance of the plaintiff's gravel pit from the defendant's railroad tracks. Second, that the statute does not purport to require railroad companies to maintain the tracks to which it relates, and the second count in the declaration finds no support in the statute should it be adjudged valid. Third, that the expenditures sought to be imposed upon the railroad company, are not for the benefit of the public, but purely for the advantage, gain, and benefit of a private company or private individuals. This removes from the case all consideration touching the taking of private property for public use, and the taking of money and the compelling of its expenditure is the taking of property. Fourth, the order of the railroad commission in no way provides for compensation to the railroad company for the expenditure it is directed to make. Fifth, the statute only contemplates spur tracks to "manufacturing or other industrial plants," and a gravel pit is neither a manufactory nor an industrial plant of any kind. It is nothing more than a hole in the ground from which gravel may be taken; it is no more a manufacturing or an industrial plant, or other sort of plant, than a pit from which clay or earth of any kind can be taken. Sixth, the statute does not regard the interest of the railroad in any way; if it be valid, a spur track, of fifteen miles or more in length can be ordered by the commission to be constructed by the railroad company at great costs, many thousands of dollars, to a pit from which only an insignificant amount of gravel can be taken.

If this suit shall be maintained, the practical result will be that the railroad company will be deprived, against its will, of nearly one thousand dollars. Can the legislature by mere statutory edict compel one person to expend money for the benefit and advantage of another? We think not, and the negative of the proposition seems so clear that we shall not elaborate an

argument in its maintenance; but content ourselves
with citing a recent decision of the supreme court of the
United States, which, we submit, is conclusive and bind-
ing on this court.

*Missouri Pacific Railway Company* v. *Nebraska,* 217
U. S. 196. The case cited involved the validity of a
Nebraska statute requiring railroad companies to make
switch connections with grain elevators under designated
conditions, and contained no provision for compen-
sating the railroad for its outlay in building and main-
taining the side track required.

The National supreme court held: First, that to re-
quire the railroad company to incur expense in con-
structing a side track was unquestionably to take its
property, and that too whatever may be the speculations
as to ultimate returns for the outlay; Second, that rail-
roads are property (although owned by a corporation)
protected by the Constitution, and there are consti-
tutional limits to what can be required of their owners
under either the police or any other ostensible justi-
fication for taking ones property away.

Cook, J., delivered the opinion of the court.

The averments of the declaration in this case, taken
most favorably for plaintiffs, make this case: Plain-
tiffs were the owners of and operated a gravel pit some-
where near the main line of the New Orleans & North
Eastern R. R. Company in Forrest county. Being un-
able to induce the company to build a spur track to
this pit, plaintiffs sought the aid of the railroad com-
mission. After hearing plaintiff's complaint the rail-
road commission made the following order, viz:

     "*The Southern Cement Building Material Company* v.
        *The New Orleans and North Eastern*
           *Railroad Company.*

"On this, a day of the regular July term of the rail-
road commission court, came on to be heard the appli-

cation of the Southern Cement Building Material Company, a partnership composed of A. K. McInnis and P. Bechgard, against the New Orleans & North Eastern R. R. Co., a corporation engaged in the business of common carrier; the plaintiffs and defendants, being called, appeared in open court and announced ready for trial, whereupon the application was read by the secretary of said Commission, and the testimony of both the plaintifs and the defendant was introduced and the arguments of counsel made; and, it appearing to the Commission, after hearing all the testimony in the case and being advised in the premises, that as a matter of fact the applicants are entitled to the relief prayed for in their petition; that the applicants are a sand and gravel mining manufacturing plant; that a practical and feasible route can be found along which to extend a spur track as prayed for by the applicants connecting their plant with the main line of the defendant company; and, it further appearing that the construction of such a spur track is necessary to the successful operation of their said plant by the applicants, and that the construction and operation of the same would be beneficial to the defendant company as well as to the applicants; and it further appearing to the said Commission that the applicants are entitled to the extension of said spur track as a matter of law—it is accordingly ordered and adjudged by said Commission that the defendant, the New Orleans & North Eastern R. R. Co., a corporation, be and it is hereby ordered to proceed forthwith and without unnecessary delay to construct the said spur track so as to connect the plant of the applicants with the main line of said company, under and pursuant to the terms, provisions, and conditions contained in chapter 88 of the Acts of the legislature of the state of Mississippi, enacted at the 1908 session thereof, upon compliance by the applicants for said track with all the terms and conditions of said

act obligatory and binding upon them; and it further appearing to the commission that route No. 2, as indicated in the plat marked 'Exhibit B' to the testimony of J. H. Putnam, civil engineer, and now on file among the papers in said cause, is a.practical and feasible route, and that the operation of engines and trains over same would not unduly hazard the trains and property of the defendant company, it is accordingly further ordered that said defendant company be, and it is hereby, ordered forthwith and without unnecessary delay to construct a spur track along said line as indicated in said Exhibit B and marked 'proposed siding No. 2' upon compliance by the applicants with all the terms, provisions, and conditions of said chapter 88 of the Acts of the legislature of the state of Mississippi of 1908.

"The grading, switches, rails, ties, etc., to be used in the construction of the spur track hereby ordered shall be of the same grade and character of material as is now used by the Louisiana Sand & Gravel Company and J. M. Chapman in the same locality and the present track of the Southern Cement Building & Material Company, and according to the uniform custom in building such tracks; the grade of the said spur track shall be in accordance with the profile plan of said spur track, as appears in Exhibit C, and marked 'profile of proposed switch S. C. B. & M. Co.'

"The said railroad company shall connect the spur track hereby ordered to be constructed with their line known as the Gravel Pit Line, and upon its completion shall supply such cars and engines to the said Southern Cement Building & Material Company over said spur track as may be necessary for the handling of its said product.

"Ordered July 6, 1910."

It is alleged that plaintiffs fully complied with chapter 88, Laws 1908, which required that applicants for

spur tracks secure the right of way, do the grading, and furnish all the material for the building of the spur; that defendant refused to construct the spur track and to maintain same after its construction; that plaintiffs, in order to reduce their damages, then proceeded to construct and maintain the spur at their own expense. Judgment is demanded for the amount of money expended by them in doing the work which the law and the order of the Railroad Commission required the railroad company to do. The aggregate amount claimed is nine hundred and fifty-five dollars and fifty-five cents.

To the declaration the defendant demurred, which demurrer was sustained. We will only consider the second and fourth grounds of demurrer, which read:

"(2) The defendant was and is under no legal duty or obligation to the plaintiff, under the act relied upon, to wit, chapter 88 of the Acts of the legislature of Mississippi of 1908, or said order of said Railroad Commission to construct or maintain, at its own expense, the said spur track, or without due compensation being first made to it."

"(4) Because the said act of the legislature, if by its terms it requires the defendant railroad company, upon the order of said Railroad Commission, to construct the said spur track at its own expense, or without due compensation being first made to it, or to pay or reimburse to the plaintiff the cost and expenses of constructing the same, is in violation of the Constitution of the United States, and particularly the fourteenth amendment thereof, in that it deprives the defendant of its property without due process of law, and denies to the defendant the equal protection of the law."

It will be observed that section 1 of the act in question confers upon the Railroad Commission the power to require railroad companies to construct, without compensation, spur tracks "so as to connect their main line with manufacturing and other industrial plants," if

they can be constructed without causing hazard to the property or trains of the railroad company. The only limitation upon the power of the Commission is to see that the property and trains of railroad companies are not put in peril by the proposed spur tracks, and, after finding that the spur track can be constructed without this hazard, the statute gives it the power to require the railroads to construct the same at their own expense. It may be that the cost of construction and maintenance may be out of all proportion to the extra revenue which may be obtained therefrom; it may be that there is no real necessity for the proposed spur, nevertheless the Commission is empowered to require its construction, and the railroad company must obey its order, unless it can be shown that its property or trains will be hazarded thereby.

We think that statutes of this character are condemned as unconstitutional by the supreme court of the United States in Missouri P. R. Co. v. Nebraska, 217 U. S. 196, 30 Sup. Ct. 461, 54 L. Ed. 727, 18 Ann. Cas. 989.

In this case, as in the case decided by the supreme court of the United States, "this statute has no reference to special circumstances. It is universal in its terms." Any person or corporation engaged in the business of manufacturing, or in any other industrial pursuit, may secure at the hands of the Railroad Commission, an order compelling any railroad company to construct a spur to serve his or its plant, whether it be reasonable to do so or not, if the Railroad Commission is of opinion that the spur track will not endanger the property or trains of the railroad company.

In Missouri Pac. R. R. Co. v. Nebraska, supra, the reason for the condemnation of the state law under consideration is expressed thus:

"We are of opinion that this statute is unconstitutional in its application to the present cases, because it does not provide indemnity for what it requires."

We think that the law in question is also condemned
in *Missouri Pac. R. Co.* v. *Nebraska,* 164 U. S. 403, 17
Sup. Ct. 130, 41 L. Ed. 489.

The statutes of Nebraska, so far as the principles in-
volved in this case are concerned, are, in all essentials,
the same character of legislation as our statute under
review.  Our statute puts it in the power of a Com-
mission to require railroad companies to spend money
for the purpose of giving special facilities to certain
named industries without requiring any indemnity for
the money expended, and without regard to the cir-
cumstances, if, in the opinion of the Commission, the
property or trains of the railroad will not be endanger-
ed thereby.  No matter what may be the special circum-
stances or necessities of the case, the Railroad Commis-
sion is given the power to order the construction of a
side track to any or all industrial plants.  What the
Commission may or may not do in each case is imma-
terial, inasmuch as their statutory power is unlimited
except as above noted.  It may be that the Commission
will, as suggested, consider each application for a spur
track upon its merits, and with due regard for the pub-
lic welfare, but such are not the requirements of the
statute.  The statute is the thing to be considered, and
it is under the authority of the statute the Commission
may take the property of railroads without requiring
due compensation, and this statutory power is just
what the Supreme Court of the United States has de-
clared to be in contravention of the Constitution of the
United States.  An unconstitutional  grant  of power
cannot be exercised in a constitutional manner.

We do not feel justified in adopting counsel's crit-
icisms of the reasoning of the supreme court in the
Nebraska cases.  Our judgment as to the correctness of
the supreme court's decisions is of little consequence.
Upon all questions involving a construction of the Na-
tional Constitution the decisions of the supreme court

of the United States are as binding on state courts as are the mandates of their own state Constitutions. However, it seems to us that the reasoning in the cases cited is unanswerable. The action of the trial court is approved, and the cause is dismissed.

*Affirmed.*