# Pennsylvania Railroad Company, Appellant, *v.* Public Service Commission.

*Railroads—Switches—Construction of switch for shipper—Act of July 26, 1913, P. L. 1374.*

A railroad company cannot be compelled to construct a private siding on its right of way at its own expense for the sole accommodation of a milling company, and not for any general public use.

Section 17, of Article V, of the Act of July 26, 1913, P. L. 1374, read in connection with paragraph o. of the first section of Article II relates to the manner in which a railroad shall conduct its business with reference to the convenience of the public rather than to the construction of tracks or the affording of switch connections.

Section 2 relating to the construction of side tracks or switches under certain circumstances merely requires a railroad company to provide a switch connection, but does not require the company to build a side track or switch at its own expense.

A shipper cannot require a railroad company to build a private siding on its own right of way at its own expense, merely because the company had maintained a private siding on the same spot for a former owner, which the company had subsequently abandoned, if it appears that the siding was not appurtenant to the property or that the shipper had any privity in the contract between the railroad company and the former owner, and that the shipper had been informed before he built his mill that the company would need the land for its general purposes.

Argued April 20, 1916. Appeal, No. 352, Oct. T., 1915, by plaintiff, from order of Public Service Commission in case of Pennsylvania Railroad Company v. Public Service Commission of the Commonwealth of Pennsylvania. Before ORLADY, P. J., HENDERSON, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Appeal from order of Public Service Commission.

The facts are stated in the opinion of Superior Court.

*Error assigned* was the order of the commission which was as follows:

Now, to wit, October 5, 1915, it is ordered: That The

Pennsylvania Railroad Company, operating the Shamokin Valley and Pottsville Railroad, shall forthwith construct, at its own expense, a siding or switch from the line of said railroad company in the Borough of Sunbury to the rear of the mill of the Kift Milling Company, said siding to be as nearly as practicable on the lines of the siding removed by the said railroad company in 1910, and to be abandoned, vacated and removed upon sixty days' notice to the said Kift Milling Company and this commission, and only after approval obtained from said commission.

*Stacy B. Lloyd,* for appellant.—The Interstate Commerce Commission held in the case of Winters Metallic Paint Co. v. Chicago, Milwaukee & St. Paul Ry. Co., 16 I. C. C. 587-589, that it had no power to order a railroad company to construct a private side track, but that its authority is limited to ordering the carrier to construct a switch connection.

The Federal statute and the statute creating the Public Service Commission of the Commonwealth of Pennsylvania are practically identical: Missouri Pacific Ry. Co. v. Nebraska, 217 U. S. 196; Chicago, Rock Island & Pacific Ry. Co. v. Oklahoma, 23 Okla. 94.

Such an order amounts to a taking of property without due process of law and is in contravention of the Fourteenth Amendment of the Constitution of the United States: Northern Pacific R. R. Co. v. Railroad Commission of Washington, 108 Pac. 938.

Congress has given exclusive jurisdiction over the subject to the Interstate Commerce Commission: Erie R. R. Co. v. New York, 233 U. S. 671; Southern Ry. Co. v. R. R. Commission of Indiana, 236 U. S. 439; Northern Pacific Ry. Co. v. State of Washington, 222 U. S. 370; Taylor Admr. v. Taylor, 232 U. S. 363; Southern Ry. Co. v. U. S., 222 U. S. 20.

*William N. Trinkle,* with him *Berne H. Evans,* for

appellee.—The order was proper: State v. Great Northern R. R. Co., 153 N. W. 247; Interstate Commerce Com. v. Illinois Cent.' R. R. Co., 215 U. S. 452; Penna. Company v. United States, 236 U. S. 351; Pittsburgh & Lake Erie R. R. Co. v. Robinson, 95 Pa. 426; Olanta Coal Mining Co. v. Beech Creek R. R., 144 Fed. Rep. 150.

OPINION BY HENDERSON, J., October 9, 1916:

This is an appeal from an order of the Public Service Commission. The Kift Milling Company filed a complaint against the Pennsylvania Railroad Company setting forth that the milling company had a flour and feed mill in the Borough of Sunbury adjoining the right of way of the railroad company; that it needed a switch or side track on the right of way of the railroad and in proximity to the mill to be used in the unloading and loading of grain, flour and other commodities dealt in by the company; that there had existed for a long time a switch or siding on the right of way in front of the property on which the complainant's mill was erected; that this siding was abandoned and torn up by the railroad company and that it has refused to replace it except at the expense of the complainants. It is admitted by the appellant that a 'siding existed as alleged up to 1902 at which time the frog and switch and all of the lead tracks and one rail along the line of the frog were taken out and removed because the switch had become dangerous through the decay of the trestle on which it was in part built. In 1910 the balance of the siding was removed. The switch had been used in connection with a lime kiln which was long ago abandoned. The milling company acquired title to their property after the switch had ceased to be used by the railroad company. The building of the mill was commenced in the latter part of 1913 and completed in August or September, 1914. The complainants demanded the restoration of the switch for the accommodation of their business and the refusal of the railroad company to build it at its own.

expense was the inducement to the order made by the
Public Service Commission.   There is no allegation that
the complainant has been in default in furnishing suita-
ble shipping facilities at the station in Sunbury.   It is
admitted that the freight station is about two hundred
feet from the mill and so far as appears in the case the
public requirements are well met by the railroad service
at that place.   The milling company contends that it has
a right to require the railroad company to furnish it a
private switch on the right of way of the railroad com-
pany at the expense of the company for the use of the
milling company in the prosecution of its business and
the order of the commission impliedly affirms that posi-
tion.   It is not alleged that the switch or side track was
ever used by the milling company or that it was built
for the use of a mill nor does it appear in any aspect of
the case that it was appurtenant to the property now
owned by the milling company.   Conceding that the
track was laid at the expense of the owners of the lime
works that was a matter of private contract with respect
to which the proprietors of the mill had no interest.
The construction of the side track did not give to the
then adjoining owners a vested interest in the right of
way nor any right to the maintenance of such side track
except as assured to them by a contract under which it
may have been constructed. As the milling company was
not privy to such contract it has no enforceable right by
reason thereof. The question is therefore whether a rail-
road company may be compelled to construct a switch or
side track on its own ground and at its own cost for the
special use of a shipper.   That such company holds its
right of way and tracks as its private property but sub-
ject to the public use for which it was incorporated is
well established and it may therefore permit its grounds
to be occupied by other parties for the receipt and deliv-
ery of freight on its railroad so long as the public service
in the carriage of freight and passengers is not interfered
with: Grand Trunk R. R. v. Richardson, 91 U. S. 454;

but whether it can be compelled to do so at its own expense and against its will is a different question. Its obligation to furnish to the public adequate facilities for the transaction of business is undoubted but to provide special facilities on its own property to an individual shipper and at its own charge involves a different liability. Resort must be had to some statute which imposes this obligation and support for the order of the commission is supposed to exist in Section 17, of Article V, of the Act of July 26, 1913, P. L. 1374, which section provides as follows : "If the commission shall find it necessary and proper to the rendering of reasonably safe and adequate or sufficient service, it may, and shall after hearing had upon its own motion or upon complaint, make an order, to be served as hereinafter provided upon every common carrier to be affected thereby, requiring all such common carriers to revise and change the time schedules of such common carriers ; to alter the running time of trains, cars, vehicles, or boats, or changes in the routes of street railway lines or systems ; or regulating or requiring the furnishing and distribution of cars, trains, vehicles, boats, motive power, or other facilities, without undue or unreasonable discrimination or preference between shippers and the switching, loading, and unloading of said trains, cars, vehicles, boats or other facilities ; the weighing or billing of cars and of property offered for shipment ; or regulating demurrage charges, track storage charges, package-room or baggage-room charges, and package or baggage transfer rates and charges ; and generally, to make such other arrangements and improvements in service and facilities as shall be just and reasonable, having due regard to the needs of the public under all the circumstances presented." When, however, this section is read in connection with paragraph o, of the first section of Article II, we think it evident that Section 17 so far as it relates to railroad companies was intended to apply to the manner of conducting the business with reference to the convenience of the public rather than to

the construction of tracks or the affording of switch connections.  The latter subject is provided for by the paragraph of Section 2 above referred to which. gives the right under certain conditions to any owner or operator of any lateral, railroad or any private side track or of any shipper tendering property or traffic for transportation or of any consignees to have a switch connection with any railroad.  This provision makes it practicable for any shipper to connect his place of business with the railroad on which he wishes to transport his merchandise if such connection be reasonably practicable and the traffic will be sufficient to justify the construction and maintenance of the switch connection. But there is a distinction between a switch connection and a side track or switch on the right of way of the railroad company.  What was intended to be provided for by this legislation was an opportunity for a company or individual to connect its or his property with the tracks of the railroad company to facilitate the shipment of freight, but nothing in the paragraph requires the railroad company to do more than provide the devices and tracks which permit the shipper to connect his track with that of the railroad company.  If one shipper may demand a private switch on the right of way of a railroad company, every other shipper is in like favorable situation, and it is easy to see to what an extent the personal property and land of the railroad company may be appropriated without compensation to the private use of companies or individuals desiring to transport goods. It was held in Mo. Pac. Ry. v. Neb., 217 U. S. 196, that an act of assembly which required every railroad company operating a railroad in the State of Nebraska to erect, equip and maintain a side track or switch of suitable length to approach as near as four feet of the outer edge of their right of way when necessary and in all cases to approach as near as necessary to approach an elevator that may be erected adjacent to their right of way for the purpose of loading grain into cars from the

elevator was unconstitutional because it required the railroad company to pay for what was a private connection and that without compensation to the railroad company. The same principle was enforced in Missouri Pacific Ry. v. Nebraska, 164 U. S. 403, and in St. Louis, Etc., R. R. Co. v. Oklahoma, 27 Okla. Rep. 424. If there were express authority in our statute for the order complained of the constitutional question would therefore arise, but we are unable to find any provision of the Act of 1913 which subjects the appellant to the obligation of building the contemplated track on its right of way. The power of the state to modify property rights to a limited degree in the public interest without compensation is not to be disputed but there are limits to the exactions to be made on owners of property under the police power or any other alleged justification in taking private property.

It can not be asserted that the appellee is subjected to a hardship with respect to the denial of the switch for switching connection has been tendered and the owners of the property had notice before the mill was built that a switch could not be provided on the right of way because the owner had in contemplation the improvement of its property by laying an additional track. The order made by the commission is by its terms revocable at the pleasure of the commission but the cost of constructing the siding is considerable and if lawful authority is not shown to support the order the appellee is not bound to bear the expense of construction even if it is not permanent in character. Our opinion is that the statute does not authorize the order filed by the commission. It is therefore reversed.