# Lycoming Edison Co., Appellant, *v.* Public Service Commission.

*Railroads—Construction of siding—Eminent domain—Discretion of directors—Public Service Commission—Jurisdiction.*

There is nothing in the Public Service Act which authorizes the Public Service Commission to order a railroad company to exercise its power of eminent domain for the purpose of constructing a siding from its tracks to the plant of a light, heat and power company. The discretionary power to exercise such power has always been lodged in the board of directors of the railroad company, and the act does not substitute the discretion of the Public Service Commission for that of the board of directors.

Whether a proposed construction by a railroad company be a siding or a branch, in either case when property must be condemned, such taking must be by a corporate act requiring as much formality as though it were a part of the main roadbed,—by a resolution of the board of directors.

A public service corporation cannot be compelled by the commission to do an act which is ultra vires, and a common carrier cannot be compelled to extend its line beyond the reasonable demand of its charter obligation; nor within the demands of the charter obligation can it be compelled to open or extend lines or branches into unremunerative, unproductive or undeveloped territory, such as coal fields or nearby towns, unless such authority be expressly granted to the commission to compel such extension, and then due regard must be had to the financial resources of the company, its ability to procure capital to make the improvement, and the probabilities of the success of the improvements must be such as not to imperil the capital already launched in the enterprise.

Argued March 15, 1917.    Appeal, No. 20, March T., 1917, by plaintiff, from order of Public Service Commission, Application Docket 242, 1915, dismissing application for an order to compel construction of siding in case of Lycoming Edison Company v. Public Service Commission of the Commonwealth of Pennsylvania.    Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ.    Affirmed.

Application for order to compel construction of a siding.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was order dismissing the application.

*Alex. Simpson, Jr., W. S. Snyder, C. B. Miller* and *J. T. Olmstead,* for appellant.—The Catawissa Railroad Company possesses the right under its charter to condemn land for the purpose of constructing such a siding, switch, branch or spur: Philadelphia v. River Front R. R. Co., 133 Pa. 134; Cleveland & Pittsburgh R. R. Co.

v. Speer, 56 Pa. 325; Black v. Philadelphia & Reading R. R. Co., 58 Pa. 249; Getz's App., 10 W. N. C. 453.

The Public Service Commission has the power to require the Catawissa Railroad Company to exercise its right of eminent domain and construct a branch, switch, siding or spur from its main line to the plant of the Lycoming Edison Company.

*John T. Brady,* for appellee.—The Public Service Commission is without power to compel the construction of the siding to the plant of the Lycoming Edison Company, and the order appealed from is in conformity with law: Penna. R. R. Co. v. Public Service Commission, 64 Pa. Superior Ct. 586; Winters Metallic Paint Co. v. Chicago, M. & St. P. R. R. Co., 16 Inters. Com. Rep. 587; Corporation Commission v. Southern Ry., 69 S. E. 621; Grand Rapids & I. Ry. Co. v. Michigan R. R. Commission, 150 N. W. 154.

OPINION BY KEPHART, J., July 13, 1917:

This is an appeal from an order of the Public Service Commission. The Philadelphia and Reading Railway Company's predecessor in title, by an agreement with the appellant in August, 1906, constructed a siding to the plant of the appellant, which is located in Williamsport. The service was continued until the Citizens Electric Company, a competitor, acquired title to a mill property and a right of way connected therewith. This right of way extended from the mill property over land, upon which the siding of the appellant was built, and ten feet of it was thus occupied. The Citizens Company objected to this occupation and secured an order from the court directing the removal of so much of the siding built on this right of way. This order was affirmed in Citizens Electric Company v. Lycoming Edison Company, 248 Pa. 603. In removing the siding a break was left in the connection between the appellee's railroad and the light plant. The appellant, to secure the service it had pre-

viously enjoyed, petitioned the Public Service Commission for an order directing the appellee "to take such action, legal or otherwise, as would restore this switch connection." Upon this petition and testimony, the issue that was raised and argued before the commission and this court was whether the commission had power to compel the railroad company to construct the siding to the plant of the appellant, and in the exercise of such authority could compel the railway company, through its right of eminent domain, to acquire the necessary right of way to "enable it to construct such siding, spur, branch road, or switch connection."

The business of the appellant is serving the public with light, heat and power. The appellee has expressed its willingness to comply with the appellant's request, provided the necessary right of way is purchased by it, but declines to use its power of eminent domain to acquire this right of way. A railway company may construct a siding to a private industry and condemn land for that purpose: Getz's App., 10 W. N. C. 453. And it has been held that the legislature may confer upon the Public Service Commission authority to compel railroads to furnish such facilities and for that purpose to exercise the power of eminent domain: Wisconsin M. & P. Ry. Co. v. Jacobson, 179 U. S. 287. But this authority must be exercised within reasonable limits and under conditions which will insure to the company the cost of the construction, as well as a fair return for its operation. Such authority cannot, however, arise by implication. It must appear by an express enactment of the legislature. Its exercise by the commission is such an invasion of the discretionary control of corporate property heretofore vested in a board of directors by acts of assembly, that it would not be wise to hold from the mere general language, as it appears in the Public Service Act, applying to all public service companies, that these several acts of assembly have been repealed and the discretion of the commission substituted for that of the board

of directors. Whether the proposed construction be a siding or a branch, in either case, when property must be condemned, such taking must be by a corporate act requiring as much formality as though it were for a part of the main roadbed,—by a resolution of the board of directors. In searching for the commission's authority within the act, we are referred to the following: The act defines the term "service" to include every facility used, furnished or supplied by public service companies, and the term "facility," as applied to railroads, to include side tracks, spurs, turn-outs, etc. Paragraph A, Section 1 of Article II, requires such company to furnish and maintain such facilities adequate and sufficient for the accommodation of its patrons, and Paragraph C to cause repairs and improvements to be made to such facilities. In construing this act of assembly care must be taken not to confound the various articles composing it. Article II deals with the duties and liabilities of public service corporations, and Article V concerns the powers and duties of the Public Service Commission. There is nothing in either of these articles expressly conferring this authority, and where, under Article V, authority is conferred on the commission to cause public service corporations to do certain acts, it should likewise point to some provision contained in Article II or be fairly deducible therefrom. As to the paragraphs now in question, the obligation here imposed refers generally to all public service companies and comprehensively covers a multitude of duties not specifically dealt with and may be sufficient authority under some circumstances upon which the commission may base its orders. But where a specific control has been placed by act of assembly in the directors of these companies, and there is nothing in the act other than these paragraphs to alter or change this statutory direction, then such authority is not disturbed, and the commission has no power under the paragraphs now under consideration to make the order requested, and Article V does not recog-

nize any such power. This becomes clearer when these paragraphs are read in connection with Paragraph O, Section 1 of Article II, where the subject of switch and siding connections are specifically dealt with. Paragraphs M and N of this same section do not impose this duty. They refer to the matters therein particularly mentioned. Section 1 of Article V gives to the commission "authority (over) ......the granting, construction, operation or discontinuance of switches, sidings and crossings." This part of the section has more specific reference to Paragraphs O and S, Section 1 of Article II.

Section 13 of this article does not, through the use of the words "the commission shall have power......to require public service companies to make......extensions and improvements in and about their facilities and service," grant an authority to compel the construction of a siding, branch or a switch connection off of the right of way. It does not have the effect of repealing or modifying the acts of assembly, in relation to such construction, which vest in the directors authority to determine such matters. A public service corporation cannot be compelled by the commission to do an act which is ultra vires, and a common carrier cannot be compelled to extend its line beyond the reasonable demand of its charter obligation; nor within the demands of the charter obligation can it be compelled to open or extend lines or branches into unremunerative, unproductive or undeveloped territory, such as coal fields or nearby towns, unless such authority be expressly granted to the commission to compel such extension, and then due regard must be had to the financial resources of the company, its ability to procure capital to make the improvement, and the probabilities of the success of the improvements must be such as not to imperil the capital already launched in the enterprise. To give this language the construction asked for by the appellant would be to place within the commission the power to require extensions, branches, sidings or switch connections to be con-

structed within the exclusive discretionary control of that body. Without discussing the constitutional phases of this proposition, it is sufficient for the present case to say that the authority does not exist. Had the legislature intended a change so radical and so vital to these companies, it assuredly would have used language that would have made it clear that such was their intention. But that the contrary thought was evident appears from the delegation of specific authority in paragraph O. Here is direct legislative recognition of the fact that the commission's authority is limited to a switch connection "with a lateral railroad or private sidetrack which may be constructed," so that it might connect with the railroad company's lines. We held in P. R. R. Co. v. Public Service Commission, 64 Pa. Superior Ct. 586, that Section 17 of Article V, when read in connection with Paragraph O, was intended to apply to the manner of conducting the business with reference to the convenience of the public rather than to the construction of tracks or the conferring of switch connections, and that the railroad company could not be compelled to build a siding on its own right of way for the accommodation of one of its patrons because the Public Service Act did not empower the commission to make such order. If it could not be required to build on its own right of way, for a stronger reason it could not be compelled to build any kind of a line off its right of way. The law as it exists prior to the Public Service Act required railroad companies to furnish switch connections to private sidetracks or lateral railroads. This section of the public service law is declaratory of the law as it previously existed, placing in the commission the power to compel obedience to that law. The act does not contain the precise definite language which, without question, contemplates passing the authority here contended for to the commission, and the commission properly found that such authority did not exist.

The order of the commission is affirmed.