# Erie & Wyoming Valley Railroad Company et al., Appellants, *v.* The Public Service Commission of the Commonwealth of Pennsylvania.

*Public Service Commission—Public Service Company Law—Act of July 26, 1913, P. L. 1374—Sidings—Maintenance of sidings.*

A railroad company cannot be compelled to maintain a private siding off its own right-of-way which is not for any general public use. When the siding is for the use of an individual shipper, and not for that of the public, the duty of the railroad company is to furnish a switch connection.

Under the provisions of the Public Service Company Law, relating to the construction of side tracks or switches, the Public Service Commission is vested with authority to require a railroad company to make the necessary switch connections, but it cannot

338, (1920).]      Syllabus—Assignment of Error.

compel the company to construct or maintain a siding off its own right-of-way.

*Public Service Commission—Public Service Company Law—Government control of railroads.*

The Public Service Commission of the Commonwealth of Pennsylvania derives its authority from the Public Service Company Law, which authority the director general of railroads, when he took possession of the railways, was without power to expand. It was not within the jurisdiction of the Public Service Commission to control roads while in the hands of the government of the United States, by virtue of the authority vested by the act of Congress in the director general of railroads. The federal control having ceased on March 1, 1920, the orders of the director general of this particular class ceased, as of that date, to be effective.

Argued October 14, 1919. Appeal, No. 36, March T., 1918, by Erie & Wyoming Valley Railroad Company and Erie Railroad Company, from order and determination of the Public Service Commission of Pennsylvania, Complaint Docket, 1917, No. 1344, in the case of Erie & Wyoming Valley Railroad Company and Erie Railroad Company v. Scranton Stove Works, Intervenor, and the Public Service Commission of the Commonwealth of Pennsylvania, on appeal. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER and KELLER, JJ. Reversed.

Appeal from order of the Public Service Commission.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was the order of the commission, which was as follows:

This matter being before the Public Service Commission of the Commonwealth of Pennsylvania upon complaint and answer on file, and having been duly heard and submitted by the parties and full investigation of the matters and things involved having been had and the commission having on the date hereof filed of record a report containing its findings of fact and conclusions

thereon which report is hereby approved and made a part hereof:

Now, to wit, October 23, 1917, the respondent, the Erie & Wyoming Valley Railroad Company and the Erie Railroad Company, lessee, are hereby ordered to repair, keep and maintain in a safe condition at their own expense, their switch connection and siding extending from the lines of the Erie & Wyoming Valley Railroad Company to the plant of the complainant, the Scranton Stove Works, situate in Dunmore, Lackawanna County, Pennsylvania.

*M. B. Pierce* and *Ralph J. Baker,* and with them *Karl E. Richards,* for appellant.—The Public Service Commission had no authority to order the railroad company to maintain a private sidetrack: P. R. R. Co. v. Public Service Commission, 64 Pa. Superior Ct. 586; A., T. & S. F. Ry. Co. v. Railroad Commission, P. U. R. 1917 B, 336; Mann v. Pere Marquette Railroad Co., 135 Mich. 210; Jones v. Newport News Co., 65 Fed. 736; Mercantile Trust Co. v. Railroad Co., 90 Fed. 148; Winters Metallic Paint Co. v. C., M. & St. Paul R. Co., 16 I C. C. 587.

*George V. Smith,* and with him *Charles H. Wells,* for Scranton Stove Works, intervening appellee.

*Berne H. Evans,* Counsel, and with him *John Fox Weiss,* Assistant Counsel, for the Public Service Commission.

OPINION BY PORTER, J., July 14, 1920:

The Scranton Stove Works, a corporation of the State of Pennsylvania, presented its petition to the Public Service Commission averring that it had entered into negotiations with the Pennsylvania Coal Company, a corporation which was closely allied to the Erie & Wyoming Valley Railroad Company and had practically

the same officers in its management, for the purchase of
a tract of land adjoining the right-of-way of the railroad
company; that during the negotiations George B.
Smith, the superintendent of the railroad company, had
addressed a letter to the stove works company express-
ing a willingness to make rates for switching charges
from certain points for a period of five years, to arrange
with connecting roads for joint rates which might be de-
sired, give reasonable switching service, and, also, to be
at the expense of grading a switch to the location in
question, the right-of-way over any land not owned by
the railroad company to be furnished by the stove works;
that the stove works purchased the land; and that "as a
part of the agreement for the purchase of the said site of
six acres and their building their furnaces and shops
thereon, the Erie & Wyoming Valley Railroad Company
promised and agreed that they would construct a switch
from their line into and over the property of the Scran-
ton Stove Works, paying the expense of constructing the
said switch and maintaining it as long as the Scranton
Stove Works require the same." The petition further
averred that the Erie & Wyoming Valley Railroad Com-
pany did construct the said switch, in 1892, and had
maintained and repaired the same at its own expense un-
til February, 1917, when it notified the complainant that
the switch, owing to the failure to repair, was in a condi-
tion dangerous to the safety of the railroad company's
employees and equipment, and inasmuch as the stove
works had refused to put the switch in proper repair
and maintain the same in safe condition all service over
said switch would be discontinued, unless the same was
put in proper and safe condition on or before the 8th day
of March, 1917; and that the railroad company de-
manded that the petitioner enter into a contract under
the terms of which the Scranton Stove Works would pay
the expense of putting the said switch in proper order
and repair. The petition averred that it would be in-
equitable to require the complainant, under these cir-

cumstances, to keep and maintain the switch in repair and prayed that the railroad company be required to repair the switch and be restrained from discontinuing service over the same. The railroad company filed an answer admitting the averments of the complaint in so far as they referred to the agreement between the Pennsylvania Coal Company and the Scranton Stove Works but denying the allegations of any contract between the railroad company and the stove works. It admitted that it had notified the complainant to repair that part of the switch the line of which was upon the private property of the stove works and that in case the repairs were not made service upon switch would be discontinued. It denied that it was under any obligation to keep and maintain the switch and sidetrack used by the complainant which was located upon the complainant's property. It admitted that it had requested the complainant to execute a standard form of sidetrack agreement, but denied that the provisions of the agreement complained of were unjust and unreasonable. During the pendency of the proceeding an arrangement was made between the parties, with the approval of the commission under the terms of which, pending the determination of the issues, the sidetrack is kept in repair and the service continued without any prejudice to the parties' legal rights. Much testimony was taken and after a full hearing the Public Service Commission filed a report and entered an order that the Erie & Wyoming Valley Railroad Company and the Erie Railroad Company, lessee, repair, keep and maintain in a safe condition at their own expense, their switch connection and siding extending from the lines of the Erie & Wyoming Valley Railroad Company to the plant of the complainant. The railroad companies appeal from that order.

The Scranton Stove Works Company, complainant, in its petition founded its right to relief solely upon the alleged contract, the evidence which it introduced was directed entirely to that end, and although the Public

Service Commission in its report expressly disclaimed any intention to give effect to such a contract, the argument in the paper-book of the stove works, as intervening appellee, relies altogether upon the alleged contract. We deem it proper, therefore, to deal with that question before proceeding to consider the argument submitted on behalf of the Public Service Commission. It is certainly very doubtful, under the evidence, whether there was any valid contract which bound the Erie & Wyoming Valley Railroad Company to keep that part of the switch off the line of the company's right-of-way in repair "so long as the Scranton Stove Works require the same." The evidence disclosed that all the negotiations, in 1892, which it is alleged resulted in a contract upon the part of the railroad company, were oral and were carried on, upon the part of the railroad company, by George B. Smith, who was the superintendent of that company. There was no evidence whatever of any corporate action by the company. George B. Smith is stated in the paper-book of the intervening appellee to have been the son of John B. Smith, who was an officer of the Pennsylvania Coal Company. The stove works contended at the hearing and established by evidence that the Pennsylvania Coal Company, at the time in question, controlled the railroad company, and the railroad company subsequently passed into the hands of the Erie Railroad Company, as lessee. The utmost that can be said for the evidence is that it would have warranted a finding that George B. Smith, the superintendent of the railroad company, had agreed that the railroad company would build and maintain this switch, which was eleven hundred and eighty-seven feet long outside of the company's right-of-way, upon the private property and for the private use of the Scranton Stove Works. The intervening appellee contends that this agreement should be enforced against the railroad company, in the hands of its lessee, because it was a "part of the agreement for the purchase of the said site of six acres," which the Penn-

sylvania Coal Company was selling to the stove works. There may have been a time when such an agreement would have been enforced, conceding it to have been made, but that agreements of this character open wide a door for the most outrageous discrimination seems too clear for argument. Such a contract certainly could not be lawfully made to-day unless the railroad company was ready to enter into like contracts with all other shippers. It is a matter of common knowledge that many of the large manufacturing establishments of the present day have miles of private sidetracks, for the receipt of their raw materials and the shipment of their finished products. If one of such establishments is to have its private sidetracks repaired and kept in good condition by the railroads which serve it, it seems manifest that it would have an advantage over a competitor who did not receive like favors. The great purpose of the Public Service Company Law, while seeking to prevent unjust and unreasonable rates, was to secure equality of rates as to all and to destroy favoritism, these last being accomplished by the publication of tariffs, and forbidding rebates, preferences and all other forms of undue discrimination. Its effect was to strike down all such contracts as that upon which the intervening appellee relies: Leiper v. Balt. & P. R. R. Co., 262 Pa. 328.

The Public Service Commission, as already stated, expressly disclaimed any intention to found its order upon the contract in question. The learned counsel representing the commission states in his brief that if the question involved was simply the enforcement of a contract by which a railroad company agreed to do something for a particular shipper, its solution would be the settlement of a private obligation and not the regulation of a public duty, such as is by the statutes committed to the jurisdiction of the commission. The commission based its order upon the finding that the switch in question is "a facility;" an integral part of the system operated by the railroad company, which it is bound to maintain at its

own expense. Is it such a facility as, under the provisions of the Public Service Company Law, the railroad company is required to furnish and maintain? We held, in Pennsylvania R. R. Co. v. Public Service Commission, 64 Pa. Superior Ct. 586, that a railroad company was not required by the statute to construct and maintain a siding on its own right-of-way, at its own expense, for the sole accommodation of a milling company, and not for general public use. In Lycoming, Edison Co. v. Public Service Commission, 67 Pa. Superior Ct. 608, we held that there was nothing in the Public Service Company Law which authorizes the Public Service Commission to order a railroad company to construct and maintain a siding off its own right-of-way. The several provisions of the statute relating to facilities of this character were fully discussed in the cases cited and it is unnecessary to again go over the ground. We held in those cases that the duty of the carrier with respect to private sidings was clearly defined by paragraph O, sec. 1, of article II, where the subject of switch and side connections is specifically dealt with. When the siding is for the use of an individual shipper and not for that of the public the duty of the railroad is to furnish a switch connection and that is all that the Public Service Commission is vested with authority to require it to do. It is properly stated by the brief filed on behalf of the commission that the words used by the parties or by the commission, in describing this piece of track have little or no relation to what the track in fact is, since ordinarily a track leading from the main line of a railroad is variously described as a "switch," a "siding," a "spur" or a "branch." "The facts and not the name decide the nature of the track." The commission has found as a fact that: "In final analysis, the entire siding, both the portion on the respondent's right-of-way and on the right-of-way provided respondent by complainant, belongs to the respondent," and, also, "The respondent claims ownership of the entire siding and this is not disputed. In the uni-

form contract which respondent submitted to complainant, it is asserted that these tracks 'are the property of the railroad company.' " If these findings of fact were supported by competent testimony they might be conclusive of the rights of the parties here involved. We have carefully considered the record certified to us by the commission and we find in it no competent testimony to sustain these findings. The complaint of the stove company did not allege that the siding belonged to the railroad company, or that it was a public siding. It averred that the siding, outside the right-of-way of the railroad company, was constructed by the railroad company upon and over the property of the stove works, for the use of the stove works "so long as the Scranton Stove Works require the same." The evidence was entirely in harmony with this assertion. The location of a part of the switch has been changed since the original construction at the request of and to suit the convenience of the stove works, part of it has been elevated upon a trestle, carried over some of the buildings, so as to permit materials to be dumped into the plant, and the stove works paid for this new construction, it being for their benefit. The switch at one point extends into New York street, in the Borough of Dunmore and when it was constructed it was necessary to secure the consent of that borough; and an ordinance was duly passed authorizing the Scranton Stove Works, and not the railroad company, to use and occupy so much of the street as might be necessary or required to construct a switch connecting its plant with the Erie & Wyoming Valley railroad. The learned and conscientious counsel for the Scranton Stove Works, at the argument of this appeal, candidly stated, "that the stove works might at any time order the railroad to move its rails and vacate the location of its siding." After a thorough review of the evidence we are convinced that he was entirely right. The uniform contract for a private siding which respondent submitted to the complainant did not assert that the

tracks "are the property of the railroad company." The commission inadvertently confused the tracks and the right to maintain them with the materials used in the construction of the same. What the contract did say with regard to the ownership of the side track was: "That portion of said sidetrack located upon the lands of the railroad company shall be its property and under its exclusive control, and all materials used in the construction and maintenance of that portion of said sidetrack, switchback and trestle located outside the lands of the railroad company shall be and remain the property of the railroad company, unless furnished or paid for by the shipper, and upon the termination of this agreement, the railroad company shall have the right to enter upon the premises occupied by said sidetrack, switchback and trestle, and, without unnecessary injury to said premises, to remove therefrom the materials owned by it, which said materials shall not be deemed fixtures appurtenant to the land." The part of this switch which is upon the lands of the Scranton Stove Works is there only because it is willing that it should remain there and the stove works may at any time compel the railroad company to withdraw from the premises. When a witness testified that freight had been delivered to some parties other than the stove works from this siding within the last few months, he was promptly cross-examined by counsel for the stove works and his attention called to the fact that such deliveries had been made with the consent of the stove works. Counsel for the commission refer to this testimony in their paper-book, but that witness candidly admitted that there never had been a delivery of freight there unless the consignee had first obtained the consent of the Scranton Stove Works. The findings upon which the commission based its order are not supported by competent evidence, and the commission was without authority to make the order.

Subsequently to the argument of this case counsel for the respective parties have filed a number of briefs in

which they refer to certain orders of the director general of railroads, it being contended that those orders have some bearing upon the question here involved.   We are of opinion that those orders can have no effect upon the rights of the parties to this proceeding.   The Government of the United States had not, at the time the order appealed from was made by the Public Service Commission, assumed control of the railroad systems of the country.   The order appealed from is that of the Public Service Commission, which derives its authority from the Public Service Company Law, which authority the director general of railroads, when he took possession of the carriers, was without power to expand.   It was not within the jurisdiction of the Public Service Commission to control the roads while in the hands of the Government of the United States, by virtue of the authority vested by the Act of Congress in the director general of railroads.   The federal control having ceased on March 1, 1920, the orders of the director general, of this particular class, ceased, as of that date, to be effective.

The order of the Public Service Commission is reversed, the intervening appellee to pay the costs of this proceeding.