## Rogers v. Indian Creek Valley Railway Company.

*Branch railroads—Public and private uses distinguished—Act of April 4, 1868.*

1. Wherever it appears from the attending circumstances that a branch or section of railroad about to be constructed will in some direct way tend to contribute to the general public welfare, or the welfare of a considerable element of the public, as in the mining and marketing of coal, it cannot be said that it will not serve a public use, and this is true, although the immediate purpose of constructing the proposed branch road is the development of the coal of a single land owner, especially when there is other coal to which the branch may be extended if necessity requires it for its operation.

2. Inasmuch as the life, happiness and prosperity of the people of Pennsylvania depend to a very large degree upon getting the coal supply of the State out of the mines and on its way to the consumer, such a project is stamped at once as one for public use sufficiently to justify the exercise of the right of eminent domain, and a bill for an injunction to restrain the construction of the branch or siding, on the allegation that it is not for public use, will be dismissed.

3. Such operations serve to develop the resources of the State, they give employment to vast numbers of citizens, and constitute a most important element in the general wealth and prosperity of the community. Considerable portions of the general public are directly interested in the traffic which goes to them, and in that which comes from them. Therefore, in the sense in which they are now being considered, they are not merely private interests.

4. The uses for which the track is desired are none the less public, because the motive which dictates its location is to reach a private industry, or because the proprietors of that industry contribute to the cost of its construction. By virtue of the conditions under which it is desired and provided, the track may constitute at all times a part of the transportation facilities of the carrier, which are operated under the obligations of public service and are subject to the regulation of public authority.

The Act of April 4, 1868, P. L. 62, considered.

Bill for an injunction. C. P. Fayette Co., No. 1046, in Equity.

*Sterling, Higbee & Matthews,* for plaintiffs.

*McDonald & Cray* and *Chad L. John,* for defendant.

VAN SWEARINGEN, P. J., Oct. 10, 1922.—Plaintiffs in their bill pray for an injunction, restraining defendant from entering upon the land of plaintiffs and constructing thereon a branch railroad or siding. Upon presentation of the bill, a rule was granted on the defendant to show cause why an injunction should not issue. A demurrer to the bill was overruled and dismissed: Rogers et al. *v.* Indian Creek Valley Ry. Co., 2 D. & C. 127.

An answer to the bill and a replication were filed, and testimony was taken, and, by agreement of the parties, the case now is before the court for final determination. The only real controversy in the case is as to whether or not the proposed branch railroad or siding is for public use. From the bill, answer, admissions and testimony we find the material facts to be as follows:

2 D. & C.

Rogers v. Indian Creek Valley Railroad Company.

1. The plaintiffs, W. D. Rogers, Elizabeth Rogers, Sarah Rogers and J. I. Rogers are residents of the City of Connellsville, in this county; the plaintiff, Ellen Reid, is a resident of the Borough of Scottdale, Westmoreland County; and the plaintiff, W. D. N. Rogers, is a resident of the City of Pittsburgh, Allegheny County; all in the State of Pennsylvania.

2. The Indian Creek Valley Railway Company, the defendant, is a corporation organized under an Act of Assembly of the Commonwealth of Pennsylvania, entitled "An act to authorize the formation and regulation of railroad corporations," approved April 4, 1868, P. L. 62, and the acts supplementary thereto, and has its principal place of business in the City of Connellsville, this county.

3. The plaintiffs are the owners of a tract of land, situate in Springfield Township, this county, containing approximately 220 acres, located near Rogers Mills, through which extends the main line of the defendant railway company.

4. The defendant proposes to enter upon the land of plaintiffs and excavate, grade and construct what it alleges to be a branch railroad or siding, the entire length thereof being about 585 feet, crossing the land of plaintiffs for a distance of about 362 feet, and, in pursuance of its purpose, it has tendered to plaintiffs a bond to secure the payment of the damages, which bond has been refused.

5. The proceedings in this court, at No. 589, September Term, 1921, whereby the defendant seeks to condemn land of plaintiffs for the construction of the proposed branch railroad or siding, are regular and conformable to law and in compliance with the requirements of the acts of assembly of this State relative thereto.

6. James P. Barger is the owner of a tract of land, situate in said Springfield Township, containing about 48.97 acres, which is distant about 300 feet from the main line of railroad of the defendant company, the land of plaintiffs intervening.

7. The said James P. Barger, in June, 1921, attempted to construct a branch railroad or siding from the main line of railroad of the defendant company to the said tract of land owned by him, for the purpose of transporting and marketing coal underlying said land, and actually located and proceeded to grade a right of way therefor over and across the land of plaintiffs, without consent and authority so to do, until enjoined by this court, sitting in equity, as will appear at No. 1029, in Equity, and the route located and surveyed by Barger is the same as the route upon which the defendant proposes to construct its said branch railroad or siding.

8. At about the time Barger attempted to construct his said branch railroad, a frog or switch was installed on the main line of defendant's railroad, which frog or switch was paid for by Barger, and said frog or switch is located at the point of beginning of the route of the proposed branch railroad or siding of the defendant.

9. The immediate purpose of attempting to construct said branch railroad or siding is the transportation of the coal underlying said Barger land, which coal is not developed.

10. At No. 589, September Term, 1921, in this court, the said Barger presented his petition under the lateral railroad acts, praying the court to appoint viewers to assess the damages occasioned by constructing, completing and using a lateral railroad extending over land of plaintiffs, on the same route as the defendant alleges it has surveyed and proposes to construct its

said branch railroad or siding; but after exceptions filed and before viewers were appointed, Barger discontinued the proceeding.

11. The proposed branch railroad or siding extends from a point in the defendant company's main line, which point is a short distance east of Rogers Mills, and eight feet from the point of the switch or private siding of the Indian Creek Coal Company, a distance of 585 feet, to a point at or near a ravine, to which point said Barger proposes to transport coal mined and removed from said Barger land, and the route of the proposed branch or siding is largely uninhabited, there being but one residence property, and no manufacturing plants, coal mines or other industries along the same, and it does not connect with any public highway, except the main line of defendant's railroad.

12. The blue-prints and plans for the proposed branch railroad or siding were furnished to the defendant by Barger, and were paid for by him.

13. The defendant and Barger have entered into a verbal agreement, whereby Barger has agreed to pay to the defendant the entire cost of constructing said branch railroad or siding.

14. Said Barger has agreed with the defendant to pay the damages, not exceeding the sum of $500, which may be sustained by reason of the construction and operation of said branch railroad or siding across land of plaintiffs, and has executed and delivered to defendant his bond, dated Nov. 18, 1921, with Republic Casualty Company, of Pittsburgh, as surety, which bond recites that said branch railroad is to be constructed to a coal mine owned by Barger and for his benefit.

15. The immediate purpose of the construction of the proposed switch or siding is the development of the Barger coal.

16. The method and course of conduct followed and used by the defendant where a switch connection or siding with its railroad is desired has been, and is, as follows: (1) The party desiring said connection makes application therefor to the railroad company, furnishing blue-prints and plans. (2) When these plans are approved, the work is done by the party desiring the siding, except the actual connecting of the switch with the main line, which is done by the railroad company, but paid for by the party desiring the switch, said party also paying for the ground upon which the siding is placed. (3) If the party desiring the switch connection cannot purchase the ground on which the siding is to be constructed, it is then condemned by the railroad company, the cost thereof being paid by the party desiring the siding. That method was followed by the defendant and Barger in the condemnation proceedings instituted, until this suit was begun.

17. There is a large body of coal up the valley or stream above the Barger coal, which can be shipped and marketed by means of an extension of the proposed branch railroad or siding.

18. It is practicable to extend said branch railroad or siding when necessity requires such an extension.

19. The proposed branch railroad or siding is for public use.

The foregoing findings of fact cover substantially and affirmatively all the requests for findings of fact presented by the plaintiffs and the defendant, eliminating certain repetitions for the sake of brevity, except the last three of plaintiffs' requests, which are: "(15) That the attempted construction of said branch railroad or siding is for the sole use and benefit of James P. Barger. (16) That the proposed branch railroad is a mere private siding, for the sole use and benefit of James P. Barger. (17) That the proposed branch railroad or siding is not for public use." All three of these requests are refused.

2 D. & C.

Rogers *v.* Indian Creek Valley Railroad Company.

As already stated, the only real controversy in the case is as to whether or not this proposed branch railroad or siding is for public use. In support of our finding of fact that it is for public use, reference may be had to Pioneer Coal Co. *v.* Cherrytree & Dixonville R. R. Co., 272 Pa. 43, where it was said by Mr. Chief Justice Moschzisker: "What constitutes public use is a point not free from difficulties, but wherever it appears from the attending circumstances that a section of road about to be constructed will in some direct way tend to contribute to the general public welfare, or the welfare of a considerable element of the public, it cannot be said that it will not serve a public use; this principle is now too well established in Pennsylvania to be questioned (citing authorities). Here, conceding that the extension under discussion will be largely employed to take coal from the Moshannon Company's properties, yet, since it must also be conceded that the life, happiness and prosperity of the people of Pennsylvania depend to a very large degree upon getting the coal supply of the State out of the mines, on its way to the consumer, this in itself, on the facts at bar, stamps a project like that before us as one for public use sufficiently to justify the exercise of the right of eminent domain. In the instant case, the original extension from the main line was toward the mine of the complainant; now it is to be carried further on, so as to open up another and very considerable field, and it may be that in the future further extensions, by branches or otherwise, will be called for to satisfy patrons who require transportation facilities and to serve public needs. There are no facts present sufficient to overcome the presumption that defendant corporation is doing what it conceives to be its duty as a common carrier, bound to keep up with public demands." And it was said further in that case: "The mere fact that some selfish interest may have inspired the plan for the part in controversy in no sense prevents that section from being classed as a 'branch' road or for public use."

In Getz's Appeal, 10 W. N. C. 453, which was a bill to restrain the building of a side track 600 feet long by a carrier to an iron works owned by private parties, it was said by Mr. Justice Green: "We cannot assent to the opposing contention, which holds that a side track, which leads only to a manufacturing or mining establishment, held in private ownership, is illegal because it does not subserve a public use. These establishments are very numerous, especially in Pennsylvania, along a near line of railroad. They serve to develop the resources of the State, they give employment to vast numbers of citizens and constitute a most important element in the general wealth and prosperity of the community. Convenience and consequent cheapness of transportation are in most cases essential and, in many, vital to their maintenance. Moreover, considerable portions of the general public are directly interested in the traffic which goes to them, and in that which comes from them. Hence, in the connection in which we are now considering them, we cannot regard them as merely private interests, and, therefore, without the pale of that public use for which private property may be taken in the construction of railroads lawfully established and actually used for public purposes." And that case was cited with approval in Pittsburgh, Allegheny & McKees Rocks Ry. Co. *v.* Stowe Township, 252 Pa. 149, and in Lycoming Edison Co. *v.* Public Service Commission, 67 Pa. Superior Ct. 608.

In Hairston *v.* Danville & Western Ry. Co., 208 U. S. 598, it was said by Mr. Justice Moody: "The uses for which the track was desired are not the less public because the motive which dictated its location over this particular land was to reach a private industry, or because the proprietors of that

industry contributed in any way to the cost;" which statement was quoted with approval by Mr. Justice Hughes in Union Lime Co. v. Chicago & Northwestern Ry. Co., 233 U. S. 211, where the court also said: "It is urged further that the statute (under consideration) is necessarily invalid because it establishes as the criterion of the commission's action the exigency of a private business. This objection, however, fails to take account of the distinction between the requirements of industry and trade which may warrant the building of a branch track and the nature of the use to which it is devoted when built. A spur may, at the outset, lead only to a single industry or establishment; it may be constructed to furnish an outlet for the products of a particular plant; its cost may be defrayed by those in special need of its service at the time. But, none the less, by virtue of the conditions under which it is provided, the spur may constitute at all times a part of the transportation facilities of the carrier, which are operated under the obligations of public service and are subject to the regulation of public authority."

We have found as facts, at the request of defendant, that there is a large body of coal up the valley or stream above the Barger coal which can be shipped and marketed by means of an extension of the proposed branch railroad, and that it is practicable to extend this branch when necessity requires such an extension. It may be that some of that coal can be operated more conveniently from other points, and that its economic development may involve questions of drainage, shafts, pumping stations and the like, but the coal is there, and is of value, and while the development and carriage of it over an extension of the branch railroad proposed in this case, as we look at it now, might involve in some respects inconvenience and large expense, we cannot tell what methods of operation advances in the coal industry hereafter may render feasible and desirable. But, anyhow, a finding that the coal lying farther up the valley than the Barger coal can be marketed conveniently over an extension of the branch railroad proposed in this case is not necessary to sustain the finding that this proposed branch railroad is for public use.

Plaintiffs, by their counsel, have requested us to state the following as conclusions of law: "(1) Inquiry may be made under the Act of June 19, 1871, P. L. 1360, to ascertain whether or not the defendant, Indian Creek Valley Railway Company, a corporation, legitimately and in good faith, attempted to exercise the power of eminent domain which it claims to possess. (2) A railroad company may not exercise its power of eminent domain for a purely private purpose or to supply a mere appurtenance to a private enterprise. (3) It having been shown by the evidence that the proposed branch railroad or siding is for the private use of James P. Barger, for the purpose of transporting the coal underlying a tract of land containing forty-eight and ninety-seven hundredths (48.97) acres, the defendant must be enjoined from excavating, grading and constructing the said branch railroad or siding. (4) The. attempt to construct the branch railroad or siding by the defendant for the use of James P. Barger is in fraud of the statutes relating to lateral railroads."

The first two of these requests are affirmed, the last two are denied. The conclusion of law we reach is that plaintiffs are not entitled to the injunction for which they pray.

And now, Oct. 10, 1922, having found that the branch railroad or siding proposed to be constructed by defendant across land of plaintiffs is for public use, the injunction prayed for in the bill is refused and the bill is dismissed, at cost of plaintiffs; this decree to be entered *nisi* according to rule.

From Luke H. Frasher, Uniontown, Pa.