## Pennsylvania Railroad Company, Appellant, *v.* Pennsylvania Public Utility Commission.

Argued October 8, 1943. Before KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT, KENWORTHEY and RENO, JJ.

*Windsor F. Cousins,* with him *L. K. Connell,* for appellant.

*Allen Lesley,* with him *Harold A. Scragg* and *James H. Duff,* Attorney General, for appellee.

*Thomas C. Evans,* for Department of Highways, intervening appellee.

OPINION BY KENWORTHEY, J., January 27, 1944:

Section 409 of the Public Utility Law (Act of May 28, 1937, P. L. 1053 as amended by Act of September 28, 1938, P. L. 44, 66 PS §1179) provides:

"(a) No public utility, engaged in the transportation of passengers or property, shall, without prior order of

the commission, construct its facilities across ......
any highway at grade or above or below grade, or at
the same or different levels; and no highway, without
like order, shall be so constructed across the facilities
of any such public utility, and, without like order, no
such crossing heretofore or hereafter constructed shall
be altered, relocated or abolished.

"(b) The commission is hereby vested with exclusive
power to appropriate property for any such crossing,
and to determine and prescribe, by regulation or order,
the points at which, and the manner in 'which, such
crossing may be constructed, altered, relocated or abol-
ished, and the manner and condition in or under which
such crossings shall be maintained, operated and pro-
tected to effectuate the prevention of accidents and the
promotion of the safety of the public.

"(c) ...... The commission may order the work of
construction, relocation, alteration, protection, or aboli-
tion of any crossing aforesaid to be performed in whole
or in part by any public utility or municipal corpora-
tion concerned or by the Commonwealth." [1]

Acting on the application of the Department of High-
ways, the commission ordered the Pennsylvania Rail-
road, appellant, to adjust to the grade of a new high-
way a portion of a sidetrack running from a switch on
one of its main tracks to the plant of Fleetwings, Inc.,
in Bristol Township, Bucks County. The order directs
appellant to furnish materials and construct the cross-
ing, to maintain it in the future, and to place warning
signs along the highway.

Pursuant to sub-section (b), it condemned and ap-

---

[1] By Section 411, 66 PS §1181, the resulting expenses shall be
borne and paid "by the public utilities or municipal corporations
concerned, or by the Commonwealth, in such proper proportions
as the commission may, after due notice and hearing, determine,
unless such proportions are mutually agreed upon and paid by
the interested parties."

propriated the land between the limits of the highway.

The sidetrack is the private property of Fleetwings. Its construction and maintenance are, under appellant's existing tariffs and the contract between the parties, the sole responsibility of Fleetwings. It is contended the sidetrack is not a facility of appellant and that, therefore, the commission had no power to make the order.

Appellant's first contention is bottomed upon an interpretation of the commission's order which is too broad, and upon apprehensions emanating from that interpretation. It points out that it has no obligation nor duty with respect to a private siding except to provide a connection; it cannot be required to construct or maintain private tracks nor to operate over them. *Pennsylvania R. R. Co. v. P. S. C.,* 64 Pa. Superior Ct. 586; *Lycoming E. Co. v. P. S. C.,* 67 Pa. Superior Ct. 608; *Erie & Wyoming Valley R. R. Co. v. P. S. C.,* 74 Pa. Superior Ct. 338; *Palmer v. D. L. & W. R. R. Co.,* 277 Pa. 1, 120 A. 668. It argues that the order runs counter to these fundamental principles and would, in effect, either prevent appellant from abandoning the sidetrack in the future or compel it, if it should abandon it, to maintain a portion of the private property of another, of which it would then be making no use and in which it would have no interest. If this interpretation of the order were valid, we would modify it. But we think it is not.

The limitation on the order, which we think is implied, is that the responsibility for maintenance shall remain on appellant only so long as appellant continues to operate its trains over the sidetrack. If, in the future, the existing arrangement between appellant and Fleetwings should, under permissible tariffs, be terminated and the sidetrack abandoned, appellant's remedy will be to apply to the commission for a termination of the order or relief from the necessity to comply with it. The suggestion that the order should have been made

in the alternative—that appellant either construct and maintain the crossing or abandon the sidetrack—is equally without merit. The record indicates that, at the time the present application was filed, the sidetrack was being used by appellant and there is nothing to indicate any intention to abandon it. If appellant preferred to abandon it rather than comply with the order, it should have so notified the commission. When properly understood, the commission's order is not an irrevocable mandate that appellant continue to maintain the sidetrack, but merely a direction that, so long as it continues to use it, the initial responsibility for its maintenance shall rest upon appellant.

We think the sidetrack, so long as it is being used by appellant, is a facility within Section 409. Although appellant, unless its tariffs so provide, has no duty to furnish private persons with anything but a connection, this court, in *Lehigh Navigation Coal Co. v. P. U. C.,* 133 Pa. Superior Ct. 67, 73, 1 A. (2d) 540, said: "The sidetrack which appellant built, when connected with the Pennsylvania Railroad, constituted a part of the railroad's transportation facilities in the same manner as if constructed by the railroad company itself. The railroad's right of way and tracks are its private property, but subject to public use. Pennsylvania Railroad Co. v. Public Service Commission, 64 Pa. Superior Ct. 586, 589. If some of these facilities constituting its transportation system are privately owned, they are none the less charged with public use, and subject to regulation by the state. Sidetracks are among the works and appendages usual in the convenient operation of a railroad (Reeser v. Philadelphia & Reading Railway Co., 215 Pa. 136, 138, 64 A. 376); they are facilities of such utility, even though privately owned; when connected with the line of the railroad company they are an integral part of the railroad system, regardless of ownership, and, as provided by Article 17, §1,

of the Constitution of 1874, become public highways, and hence subject to regulation as such by the state."

But appellant contends, relying on *Erie & Wyoming Valley R. R. Co. v. P. S. C.*, supra, that, since generally sidetracks are constructed and maintained by the private industry served, an order directing appellant to construct and maintain a part of the sidetrack of this particular customer is discriminatory, viz, it transfers from the customer to appellant the cost of maintaining a part of the customer's sidetrack without giving a similar benefit to appellant's other customers. The broad order in the *Erie* case, which directed the railroad to maintain the entire sidetrack of one of its customers, was declared invalid. We assume the commission will deal with reasonable uniformity in other similar situations. But every discrimination is not, ipso facto, invalid. The question of reasonableness is implicit in the question of validity (Section 413 of the Public Utility Law, 66 PS §1183). We do not hold that an order like the present one would be valid in every case; we might have a different situation here if the track were not only owned by, but the trains running over it were operated by and exclusively under the control of Fleetwings. What we do hold is that, where the railroad operates its own trains over a sidetrack, a statutory regulation which imposes upon it the responsibility for the public safety incident to the risk of the operation is not an unreasonable exercise of the police power of the state. *Alton R. Co. v. Ill. Commerce Commission*, 305 U. S. 548, 59 Sup. Ct. 340.

The initial cost of construction involved in complying with the order is slight. But appellant contends that if the principle of the validity of this order is once established the commission might impose an unreasonable burden in some future case. It is a sufficient answer to point out that, if the commission should apportion the costs of construction in such manner as to im-

pose an unreasonable burden on appellant or any other utility, the remedy would be to appeal. Section 411, supra note 1. See *Somerset County v. P. U. C.*, 132 Pa. Superior Ct. 585, 1 A. (2d) 806.

The question whether, as between themselves, appellant or Fleetwings must ultimately bear the cost of construction and maintenance is a private matter depending upon appellant's tariffs and the terms of the contract between the parties; the rights and liabilities of the parties among themselves are unaffected by the order. *Pa. R. R. v. P. U. C.*, 136 Pa. Superior Ct. 1, 7 A. (2d) 86. The legislature has merely authorized and the commission has ordered that the initial responsibility is appellant's.

Order affirmed.